THE STATE, THE NEW YORK AND LONG BRANCH RAIL-ROAD COMPANY, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF SOUTH AMBOY.

1. The general principle of law is clear that, while the mere survey and platting of lands into lots, defining streets, will not amount to a dedication, yet a sale of lots with reference to such platting, or by describing the lots in the conveyances, bounded by such streets, will, as between the grantor and grantee, amount to an irrevocable dedication of the streets. But in order that the dedication be to the public use, it

must not only have the assent of the owner of the soil, but there must either be a formal, authorized acceptance on the part of the public authorities, or else an actual enjoyment by the public of the use for such length of time that the public accommodation would be materially affected by a denial or interruption of enjoyment. A proof to the satisfaction of the court of marking on a plat, accompanied by public use, sustains the right of dedication claimed by the public against the owner or those claiming under him.

2. A dedication by the owner of streets does not make them public streets until the proper municipal authorities have accepted them as such, or in some way by public user ratified the dedication. The public acquire no rights, nor is it subject to any burdens, by reason of the dedication, unless it be by some formal act of acceptance or by unequivocal public user.

3. The power of summary forcible removal of obstructions from public streets or highways by the public authorities, by virtue of an ordinance or resolution, can only be exercised to the extent that the right is clear, or may be reasonably known and exercised in such a manner that it does not invade such rights as, from their nature, need to be first lawfully determined by adjudication ; the power cannot be used to determine the rights of private property, and whenever it is used as a guise to that end it is illegal; an obstruction to a street can only be removed forcibly and in a summary manner when it is apparent or readily ascertainable, without·adjudication, as to the right. It does not extend to cases of a doubtful and uncertain nature, which require to be lawfully determined.

On *certiorari.*

Argued at June Term, 1893, before Justices·DEPUE and LIPPINCOTT.

For the prosecutor, *Applegate & Hope.*

For the defendants, *Aaron E. Johnston.*

The opinion of the court was delivered by

LIPPINCOTT, J. This *certiorari* brings up for review a resolution of the mayor and council of the borough of South Amboy, passed on the 19th day of July, 1892, under color of an ordinance adopted by the mayor and council of said borough on the 6th day of September, 1888.

The resolution is as follows, to wit:

"*Resolved*, That Henry street be graded and made passable from Broadway to Raritan bay, and the New York and Long Branch Railroad Company be notified to remove the fence and platform erected by them across said street; and if said fence and platform is not removed within sixty days, in accordance with law, the street commissioner be authorized to and instructed to remove the same."

The ordinance is as follows, to wit:

" 1.  Be it ordained by the Mayor and Council of the Borough of South Amboy, That the owner of any building, fence or other encroachment or obstruction now standing or which may hereafter be erected or placed upon any street, highway, public lane or alley, or other public ground within the limits of the borough, shall remove the same within sixty days from and after the time when he or she shall be required to remove the same by a notice in writing or printing signed by the street commissioner.

" 2.  At the expiration of the time limited in such notice as provided for in section one of this ordinance, if such obstructions are not removed, it shall be the duty of the street commissioner to remove the same and keep an itemized account of the costs thereof, and present the same to the mayor and council of the borough of South Amboy, who shall proceed at once to enforce the collection of the same in accordance with law; *provided, however*, that nothing in this ordinance shall affect any public building, store, hotel or dwelling-house which now encroaches on the building lines.

" 3.  This ordinance shall take effect only on all streets, highways and public places, beginning and situate, lying and being, on the easterly side of the easterly line of Stevens avenue.

" 4.  Be it ordained, That this ordinance shall take effect on the 17th day of September, 1888."

The prosecutor for many years had maintained, in connection with its passenger station at South Amboy, a fence and platform across what was known as Henry street, which is within the territorial limits as defined in the ordinance.

In pursuance of the resolution the street commissioner of the borough served a notice upon the New York and Long Branch Railroad Company, dated August 3d, 1892, calling attention to the ordinance, and notifying the railroad company to remove the fence and platform within sixty days, and also stating that he was authorized to remove said obstructions.

On the 13th day of October, 1892, the railroad company, having previously received notice that the street commissioner intended to remove the fence and platform, sued out this writ of *certiorari,* which was served on the following day.

In the meantime the street commissioner, with a gang of workmen, between two and three o'clock in the morning of the 14th day of October, removed the platform and the fence standing along the outer edge of it, and put up a notice that Henry street was open for travel. The railroad company on the same day restored the fence and platform, and they have since remained in their original positions.

In the briefs of counsel the question whether the ordinance was legally adopted by the mayor and council of the borough of South Amboy is discussed. It is for the purpose of this cause assumed that the adoption of the ordinance was within the municipal authority of the borough, and that its passage was clothed with all the necessary legal forms and prerequisites.

The question which is considered is whether the street commissioner, by virtue of this ordinance and resolution, was authorized in law to forcibly remove the alleged obstruction in Henry street. This is the position of the borough authorities, and it involves a consideration of the legal character of the *locus in quo* upon which these erections of the railroad company were placed.

The New York and Long Branch Railroad Company was incorporated by an act of the legislature of this state, entitled

"An act to incorporate the New York and Long Branch Railroad Company," approved April 8th, 1868. *Pamph. L., p.* 852. It is provided in the sixth section of this act that "when the route of said railroad shall have been determined upon, and a survey of the same deposited in the office of the secretary of state, then it shall be lawful for the said company, by its officers, agents, engineers, superintendents, contractors, workmen and other persons in their employ, to enter upon, take possession of, hold, have, use, occupy and excavate any lands, and to erect embankments, bridges and all other works necessary to lay rails, and do all things which shall be suitable or necessary for the completion or repairs of said road."

On November 3d, 1872, the railroad company filed and recorded its location according to the statute of that portion of the road through the then village of South Amboy, which crosses Henry street, and this location now is occupied by the company as its right of way, and the railroad tracks were shortly afterward laid across Henry street on an embankment, and in the year 1876 the fence and platform were erected, which embankment, fence and platform have ever since remained in their present location.

At this time the village of South Amboy was under a township government, with limited powers relating to public streets and roads. In the year 1888 the borough of South Amboy, under the name of "The Mayor and Council of the Borough of South Amboy," was incorporated under an act entitled "An act for the formation of borough governments," approved April 5th, 1878 (*Rev. Sup., p.* 44), and the supplements thereto. Under that act the mayor and council of the borough of South Amboy were authorized to pass, enforce, alter or repeal ordinances to take effect within the limits of said borough, to prevent and remove obstructions, encumbrances and nuisances upon any street, road or sidewalk in the said borough; and also under this act the mayor and council had general supervision, management and control of the streets and roads therein, and consequently, if Henry street was then a public highway, the control of the same, to

the extent to which it was dedicated or laid out, became vested in the municipal authority of the borough.

There can exist no doubt that, within certain limitations, the power of the borough authorities, by virtue of this ordinance, was ample to summarily remove obstructions from the public highways and streets therein, but the power could not be exercised where there was doubt and uncertainty as to the existence of such public highways, as well as to the extent and lines thereof, and therefore the character of Henry street, in view of the claim of the railroad company that their possession and occupation of this place for the fence and platform has been long continued, under a claim that Henry street is not a public highway, or, if so, then that its extent and lines are uncertain and undefined, becomes a subject of much importance with respect to the exercise on the part of the borough of the power of a summary forcible eviction and removal of the fence and platform.

The title to the lands in South Amboy, including Henry street, in the years 1834 and 1835, was, by the then owners of the several different tracts comprising the village, conveyed to James P. Thomas and Alexander Cothiel, in trust, to survey and lay out into building blocks and lots, with streets thereon, and to sell the same for the benefit of the owners. These trustees caused a survey of these tracts of land and a map of the same to be made, dividing the same into blocks and lots with streets and avenues running through the same. The map was entitled "Map of property situate in the Town of South Amboy, Middlesex County, New Jersey, by John Perrine, Surveyor." The map was signed by the trustees and filed on March 12th, 1836. On this map Henry street, sixty feet in width, appears running from the Raritan bay westerly to, across and beyond another street, intersecting Henry street at right angles, called Broadway. The location of the railroad tracks across Henry street is about one hundred feet easterly of Broadway.

Thomas and Cothiel, the trustees, sold and conveyed the lots along these streets and avenues according to lot and block

numbers, and by particular descriptions bounding the lots so conveyed by the lines of the streets. The lots along Henry street, on both the north and south sides thereof, were also conveyed by deeds of conveyance, the descriptions in which were bounded by the lines of Henry street. Each conveyance made by the trustees contained a reservation as follows: "Excepting the public highway adjoining or in front of said lots to the middle of such streets, avenues or roads, subject to the use of said lands by all the owners of lots laid down on said map and of the public generally as public streets, avenues and roads to be opened and to remain open accordingly."

The prosecutor purchased the lands on both sides of Henry street for the location of its railroad, by lot numbers and by particular descriptions, bounded by the lines of Henry street, and its title is deduced from the trustees through several mesne conveyances, but none of the conveyances by which the prosecutor acquired title contain the reservations found in the deeds of conveyance from the trustees to their immediate grantees.

Thus, so far as the owners of lots on this map were concerned, there existed an express dedication to their use and also a dedication to public use, conditioned upon acceptance on the part of the public by a sufficient public user or otherwise.

The general principle of law is clear that, while the mere survey and the platting of lands into lots defining streets will not, without a sale, amount to a dedication, yet a sale of lots with reference to such platting or by describing the lots as bounded by such streets will, as between the grantor and grantee, amount to an irrevocable dedication of the streets. But, in order that the dedication be to the public use, it must not only have the assent of the owner of the soil, but there must either be a formal, authorized acceptance on the part of the public authorities or else an actual enjoyment by the public of the use for such length of time that the public accommodation would be materially affected by a denial or interruption of enjoyment. A proof to the satisfaction of the

court of marking on a plat, accompanied by public use, sustains the right of dedication claimed by the public against the owner or those claiming under him. 2 *Dill. Mun. Corp., p.* 744, § 631.

These principles have been declared in many adjudications in this state. *Dummer* ads. *Selectmen of Jersey City, Spenc.* 86 ; *Mayor, &c.,* v. *Jersey City,* 1 *Beas.* 547 ; *Trustees M. E. Church* v. *Hoboken,* 4 *Vroom* 13 ; *State, Central Railroad Co. of New Jersey,* v. *Elizabeth,* 6 *Id.* 359 ; *affirmed,* 8 *Id.* 432 ; *Hoboken Land Improvement Co.* v. *Hoboken,* 7 *Id.* 540 ; *Clark* v. *City of Elizabeth,* 11 *Id.* 172 ; *Mayor, &c., of Bayonne* v. *Ford,* 14 *Id.* 292 ; *Gloucester Land Co.* v. *Mayor of Gloucester City, Id.* 544.

But a dedication by the owner of streets does not make them public streets or highways until the proper municipal authorities have accepted them as such, or in some way by public user ratified the dedication. *Pope* v. *Union,* 3 *C. E. Gr.* 282 ; *Attorney-General* v. *The Morris and Essex Railroad Co.,* 4 *Id.* 386, 391.

Whilst the fact of dedication may be clear as against the owner, or those claiming under him, yet there must exist, on the part of the public, a ratification or acceptance evidenced by some authorized formal municipal act or a public user. The public acquired no rights, nor is it subject to any burdens, by reason of the dedication, unless it be by some formal act of acceptance or by unequivocal public user. 2 *Dill. Mun. Corp. (4th ed.)* 642, and cases cited in the note.

In this matter it appears that, up to the time of occupation of this alleged public street by the railroad company, and up to the year 1892, the public had made no claim to this street as a public highway ; there had been no formal acceptance of it as a public highway ; and the use made of it by the public was of an ambiguous and uncertain character. It is this uncertainty which now renders the claim made by the borough to it as a public highway of a very doubtful nature.

At the time of the location of the railroad by the prosecutor in 1872, and from the time of the platting of the land into blocks and lots in 1836, up to the year 1888, the territory now

included in the borough was entirely under a township government, and during nearly the whole of that period the evidence quite clearly indicates that these streets, as such, were very little used by the public as streets; the public used the whole of these tracts of lands, including the portions designated as streets, as a common without regard to the lines of the streets. In fact, there were, in most instances, no visible monuments on the ground by which the streets or the lines thereof could be identified.

It appears as a conclusion from the evidence, which is entirely two voluminous to discuss, that from 1836 to the time of the location and construction of the railroad tracks and the platform and fence connected with the passenger station, Henry street had been used only to a slight extent in any part thereof; and that part across which the railroad tracks were laid, and upon which the platform and fence were erected, had not been used at all. There was a blacksmith shop and also a small mill at some distance easterly of the point of the railroad crossing, but access was not gained to them by the use of this portion of the street, but by intersecting streets easterly of the line of the railroad, and in fact it is not clear that access was had by the use definitely of any street, but generally by the use of any way across the lands chosen by those whose business required them to go there. That portion of this street where these erections were made was a low, boggy spot, and all travel in that direction was for this reason diverted to the north of this place and around it. The so-called street had no defined monumented lines whatever, and a stream flowed along the greater portion of it from Broadway easterly and frequently submerged it and the lands around and about it. At other times the tides from the bay overflowed the street, and in fact this alleged street was no more used and to no greater extent than the lands beside it. Neither was there any public use which indicated the existence of a public highway. While to the east of the railroad crossing the owner of the blacksmith shop and mill had made it slightly passable, still it was not of such a character as ren-

dered it accessible to that portion westerly of the railroad cross-ing. The use of the street was therefore uncertain and unde-fined, especially upon that portion which was taken possession of by the prosecutor for the construction of the railroad tracks and the platform and fence.

This was the situation at the time of the location of the railroad and the construction of its tracks, platform and fence across Henry street. The railroad company purchased the lands on both sides of Henry street at this point, and there-fore became the owner in fee simple of the lands of that portion of its right of way across the street, subject to the easement of the lot-owners or the public, if any existed. The lot-owners are not parties complaining to this proceeding in *certiorari*, and it is in evidence that the only owner upon the street who had made any erections easterly of the line of the railroad assented to the use made by the prosecutor of the street. The construction of the railroad prevented the use of the street if it had been passable, and did prevent its use from the year 1872 to the year 1892, when the proceedings on the part of the borough now questioned were instituted. During all this period the prosecutor has been in the possession and use of this street at this point, and there never existed during this time, either on the part of the lot-owners or on the part of the public authorities, any contention against the right and authority of the railroad company to maintain its platform and fence there, or against the devotion of the use of this portion of the street to these purposes.

In the year 1886 the owners of land along Henry street made an attempt to have the same regularly laid out as a public road across the railroad. After opposition on the part of the railroad company the surveyors of the highways laid it out, but the return of the surveyors was set aside by the Supreme Court on the ground that, since the passage of the act of 1881 (*Rev. Sup.*, p. 874, § 10), a public road cannot be laid out across a railroad within five hundred feet of any other public road which crosses the same railroad, and that the road as contained in the return of the surveyors was so laid,

contrary to the provisions of this act; and further, on the ground that the return did not show any assessment of damages in favor of the railroad company by reason of laying out the highway. *New York and Long Branch Railroad Co.* v. *Capner*, 20 *Vroom* 555.

It may be that the railroad company has no authority to maintain this platform to the station, and the fence beside it. The borough authorities contend that it is a public highway, and that these obstructions can be removed in a summary manner.

The contention of the railroad company is that the borough has no rights in this street at this point—that the *locus in quo* is the private property of the company, over which, by legislative authority, it had the right to construct the railroad tracks and the platform and fence. Upon the case as made here it does appear that the right of the borough is so uncertain and doubtful that it cannot be enforced by the summary forcible removal of these obstructions. The prosecutor is in the exercise of franchises intended for the public benefit, and they have for a long time been in the occupation and possession of this crossing, apparently with the assent of the landowners on the street, and of the general public authorities, and therefore the resolution, so far as it allows or directs the summary forcible action of the borough officers as an adjudication of the rights of the prosecutor, is illegal. Whether the ordinance be of a character sufficiently comprehensive to include the structures of the prosecutor as obstructions or encroachments, in the sense to justify a forcible removal or not, is immaterial, as the resolution itself is urged as the justification for the summary action of the street commissioner of the borough, and the resolution, if possessed of any efficacy whatever, was a direction to commit the forcible summary act of removal of the platform and fence. It will be noticed that these erections were not of a temporary character, but had existed there for a long time for the public benefit, and the right of further maintenance should have received a judicial determination before their removal. The manner in which

the removal was made evidences the fact that it could not have been made peaceably at any time except by night, and the borough authorities only avoided a breach of the peace by removing the obstructions at that time. Such a proceeding settles nothing in such an uncertain and doubtful matter, and the result would be the alternate demolition and reconstruction of this platform and fence for an indefinite period.

This subject has received the attention of the courts, and we are not without adjudications determining the principles of law to be applied. The case of *State, Associates of Jersey Co.,* v. *Mayor, &c., of Jersey City,* 5 *Vroom* 31, in this court, was a case where the sixtieth section of the charter of Jersey City vested in the mayor and council the power to remove all encroachments on the streets and public places of the city by ordinance or other appropriate municipal action. Mr. Justice Bedle, delivering the opinion of the court, said : " The power to remove obstructions from public streets, as given to the common council by the sixtieth section of this charter, is only a police ministerial power to prevent and relieve the public from such obstructions in the enjoyment of these streets as are apparent and readily ascertainable, without the necessity of any adjudication. It does not extend to cases of a doubtful or uncertain nature, and which require to be lawfully determined." *Vantilburgh* v. *Shann,* 4 *Zab.* 740 ; *Austin* v. *Murray,* 16 *Pick.* 126.

Such a power can only be exercised to the extent that the right is clear, or may be reasonably known, and only exercised in such a manner that it does not invade such rights as from their nature need to be first lawfully determined by adjudication. This power cannot be used to determine the rights of private property, and whenever it is so used as a guise to that end it is illegal. *State* v. *Trenton,* 7 *Vroom* 287 ; *Avis* v. *Vineland,* 26 *Id.* 283 ; *Dawes* v. *Hightstown,* 16 *Id.* 127.

In Dawes *v.* Hightstown, Mr. Justice Reed declares this power to be only a police power, and it cannot extend in its exercise to cases of a doubtful and uncertain nature and which require to be first lawfully determined. In *Dawes* v.

*Hightstown,* 16 *Vroom* 500, it was held—Mr. Justice Magie delivering the opinion of the court—that the power given to a municipal corporation to pass ordinances for removing obstructions, encroachments and nuisances from highways is a mere ministerial police power, and that it differs from the power given to fix and determine boundaries of highways in order to ascertain whether there are encroachments thereon, which power is judicial, to be exercised on notice. The former power does not justify municipal authorities in the removal of buildings occupied along the line of a street for thirty years, under pretence that they had adjudicated that the buildings were within the lines of the street, and therefore encroachments thereon, although the ordinance so adjudicating was passed on notice to the owner after he had an opportunity to be heard. And in *Childs* ads. *Nelson,* 69 *Wis.* 125, the action of the city authorities in a summary removal of an encroachment was sustained only upon the ground that the obstruction was apparent and readily ascertainable without the necessity of adjudication as to the right, and on the ground that the party knew that his claim to obstruct the street was perfectly groundless.

If this resolution should be upheld on *certiorari,* the only effect would be an invitation to the borough authorities and the railroad company to repeat the action already taken respectively by them; that is, the alternate removal and restoration of these alleged obstructions in this street. This should be prevented as a matter of good public policy, if for no other reason. When corporations or individuals have been for a long time in the possession and enjoyment of property, the determination of the right of such possession and enjoyment should not be by force or violence, but by the orderly remedies provided by the law of the land in courts of appropriate and competent jurisdiction.

The conclusion reached is that, so far as this resolution under review is considered as an authority to the street commissioner to use forcible means for the removal of the structures in question, it must be deemed illegal and void, and therefore set aside.