On January 13th, 1931, the banking commissioner took over the affairs of the defendant as an insolvent corporation, *Page 524 
under section 56, subdivision B, of the Insurance Company act, as amended by chapter 68 of the laws of 1930. P.L. p. 288. Shortly thereafter, and in aid of the commissioner's administration, the commissioner's deputy in charge was appointed receiver in insolvency in this cause; but the commissioner objected, whereupon the present receiver was appointed, who was ordered not to interfere with the commissioner's possession, but was given leave to move to restrain the commissioner from acting and that he deliver to the receiver possession of the company's assets. The motion was made and was argued, but before decision the commissioner joined in the application for the receiver and turned over to him what remained of the estate. He has filed his account and asks its confirmation. He also asks that the fees of his counsel be fixed. Counsel asks $15,000. The master to whom the account was referred to report on the reasonableness and propriety of the commissioner's expenditures and of counsel fees, approved the disbursements as stated in the account, and the counsel fee as not unreasonable. Objection is made to the confirmation of the report.
The commissioner's net receipts were $34,615.15, his disbursements, $32,385.82, and the balance, $2,229.83, he turned over to the receiver. In addition, the commissioner incurred obligations, now unpaid, aggregating $3,036.70, and there is due the banking department for an examination of the corporation's affairs preliminary to taking it over, $1,797.06, which the master also approved.
The total of assets which came to the commissioner's hands had a face value of $133,407.61. The company was a mutual concern with taxicab and jitney accident policies outstanding, subject to premium assessments of, it is said, $800,000 and upwards. The collection of this item was the chief concern of the commissioner, in order to liquidate the liabilities on policies adjusted by him at over $206,000, and additional unadjusted claims, since presented to the receiver, of over $610,000. In this work, which required a vast amount of accounting, and in the general management of the liquidation proceedings, the commission expended *Page 525 
$13,000, plus, in salaries. The items are given in detail in the commissioner's report, and the summary by counsel is assumed to be correct. It is not disputed that the work was necessary, that it was done and that the salaries of the deputy commissioner and aids are at the customary and prevailing rates for such services.
When the commissioner took charge, he canceled all policies, but continued to defend suits then pending, and others that were started during his regime, against policyholders by persons injured by the policyholders' taxicabs and jitneys, and in this expended $12,000 and upwards. The contract of insurance put upon the company the burden of defending suits against the policyholders, but when the commissioner became liquidator and the assets a trust fund, expenditures for the defense of a few violated the rule of equality among creditors — all the policyholders liable in damages for accidents. The statute authorizes the commissioner to defend suits against the company only, obviously to protect the trust estate. The receiver was ordered not to defend suits against policyholders upon succeeding the commissioner. The expenditures are not, however, to be disallowed and the commissioner made to suffer the consequences because of an honest mistake. The statute had not been construed by the court and he misinterpreted its meaning. A public official, acting with due care and diligence, under advice of counsel, in the discharge of a public trust, is, as a matter of public policy, not liable for mistaking his course in the performance of his duties, for, otherwise the government would be seriously hampered by honest men refusing to enter its service. It is readily seen how the commissioner and his counsel fell into the error. The statute provides "upon taking possession of the property and business of such company, the commissioner is authorized to collect moneys due to such company and do such other acts as are necessary to conserve its assets and business," and he thought, and with reason, that the defense of suits would conserve the estate against excessive or unfounded claims, and, in fact, that was the result.
Next comes the fee of Mr. Pearce Franklin, appointed by *Page 526 
the commissioner as his counsel. Under the statute, the commissioner should have fixed the amount for the court's approval. That he has not done; he is now out of office and cannot; the court, having taken over the estate, will fix the compensation. Mr. Franklin took upon himself the entire legal administration. In truth, it required skilled counsel and the administration was put upon him; the deputy, of course, was in charge and he and his aids worked out details, but in the final analysis Franklin was the guiding spirit in the liquidation. It is common experience that the lawyer "runs the works." He labored for a year, giving most of his time. There were one hundred and twenty district court cases, and two hundred and twenty-five pending in the upper courts when the company collapsed. He supervised them; local lawyers had been retained to defend them; he tried forty in the upper courts. Others were started later and he prepared to defend. He adjusted all sorts of claims aggregating in excess of $200,000, and that meant work, not as trying as the trial of causes, but as effectual and perhaps more beneficial to the estate. The deputy commissioner and his accountants prepared an assessment against policyholders. It can best be described that the book weighs at least five pounds and Franklin had a hand in it and brought some three hundred assessment suits. In fact, Franklin did everything that a lawyer could do to speedily settle the estate. There can be no disagreement with the master that Franklin's charge of $15,000 is not unreasonable if it is considered as the master did, that his office expenses were $10,000, and that, as an overhead, they should be charged against the estate. The overhead is an element to be considered, but it is not a charge. Lawyer's fees are allowed for ability and service, not office force and cost. The test of compensation is the value of the service rendered considering the actual pains, trouble and accomplishment in the settlement of the estate. A fee of $10,000 is considered fair.
The receiver, Mr. Beatty, has filed his intermediate account and asks for an allowance of $3,500 and his counsel, Israel B. Greene, a counsel fee of $10,000. Both receiver and counsel *Page 527 
have been assiduous in the performance of their duties, and their services may eventually be highly profitable to the creditors, but they must wait for substantial compensation until there is realization. They impliedly undertook their offices with that in mind. There is much and hard work to be done.
The receiver may draw $1,500 and his counsel $2,500, to be accounted for in the final settlement. The cause will not permit of more, though they are deserving of more.