[Civ. No. 2419.   Fourth Appellate District.—August 21, 1939.]

M. G. NORTON, Appellant, v. CHARLES W. HOFFMANN et al., Respondents.

M. G. Norton, *in pro. per.*, for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and John L. Bland and Bourke Jones, Deputies City Attorney, for Respondents.

HAINES, J., *pro tem.*—The complaint in this action is in six counts. In the first count plaintiff and appellant alleges that he was, on October 10, 1892, duly admitted and licensed to practice as an attorney and counselor at law in all the courts of the State of California, and that at all times mentioned in his complaint, and for nearly half a century, he has been such attorney and counselor at law in good standing, admitted to practice law and entitled to practice the same in the courts of the State of California and in the federal courts.

It is alleged that in August, 1933, defendant The John M. C. Marble Company, a corporation, in the Municipal Court of the City of Los Angeles, sued one Hattie F. Norton, and her husband Aaron F. Norton, who is appellant's brother, seeking to recover $113.60; that in said municipal court case, defendant Wackerbarth appeared as attorney for The John M. C. Marble Company, and appellant entered his appearance as attorney for said Hattie F. Norton and Aaron F. Norton; that according to his information and belief some time prior to June 20, 1935, defendant The John M. C. Marble Company, defendant John M. Marble, its president, defendants Wackerbarth, Hendrick, and defendants and respondents Chesebro and Hoffmann, the latter two then being respectively, city attorney and deputy city attorney of defendant and respondent City of Los Angeles, conspired together to eliminate appellant from further participation in said municipal court case by charging him with having committed a misdemeanor in acting in said municipal court case for the said Hattie F. Norton and Aaron F. Norton without being an active member of the state bar, all in violation of the State Bar Act.

The complaint goes on to allege that in pursuance to such conspiracy, at the instance of Marble and Wackerbarth, respondent Chesebro, on June 20, 1935, authorized a criminal prosecution against appellant on the verified complaint of his deputy, respondent Hoffmann, that such complaint contained six counts and was on said last-mentioned date filed in said municipal court and that, upon being arraigned, appellant pleaded not guilty to it.

It is further alleged that said criminal cause came on for trial before said municipal court sitting with a jury; that said city attorney submitted the case on behalf of the People and rested; that thereupon, appellant, having presented to the court a certificate from the clerk of the Supreme Court of the State of California, certifying that he, said appellant, was an attorney and counselor at law in good standing and duly admitted as attorney and counselor at law in all the courts of this state, the court ordered a dismissal of said criminal complaint, the discharge of appellant from custody and the jury from further service.

It is further alleged that the issuance and filing of said criminal complaint, and said entire prosecution of appellant were without probable cause and induced by the influence exerted upon respondent Chesebro by other defendants and were done with intent on the part of the present respondents, maliciously, to harass, annoy and injure appellant and destroy his reputation as attorney and citizen and to unjustly subject him to humiliation, contempt and embarrassment in the eyes of the public. The complaint states that appellant had never before been charged with any crime but had borne an exemplary character; that he was required to appear repeatedly in court in the company of many criminal offenders; that his trial occurred during the week of July 15, 1935, while a convention of the American Bar Association was in session in Los Angeles; that by reason of appellant's prominence and the nature of the offense charged, the occurrence received considerable newspaper publicity, to appellant's great distress and humiliation; in consequence of all of which he has suffered anguish in mind and body and his health has been impaired, in addition to the loss of time occasioned to him in his business. Appellant complains in the first count of his complaint that he suffered by reason of the occurrences recited, special damages through loss of time, to the extent of $1,000,

and for expenses incurred in defending himself, in the sum of $100, as well as general damages for humiliation, worry, and injury to his health and reputation in the sum of $10,000. He further asserts that the defendants have, in the premises, been guilty of fraud, malice and oppression, for which exemplary damages should be awarded in the sum of $30,000. By reason of the matters stated in his first count, therefore, he asks judgment for damages aggregating $41,100.

By way of a second cause of action, he largely repeats the allegations of his first cause of action, but, instead of setting up the general charge made against him in the municipal court, of acting in the case referred to, for Hattie F. Norton and Aaron F. Norton, without being at the time an active member of the state bar, he sets up the specific charge made against him in the second count of the complaint filed with the municipal court, namely, that without being at the time an active member of the state bar he made and filed an affidavit for a *subpoena duces tecum* in said action in which Hattie F. Norton et al., were defendants. By reason of his prosecution on this charge he seeks damages in sums identical in amount with those sought in his first count, aggregating $41,100. So, also, in the four remaining counts of the complaint in the instant case, he, for the most part, repeats, in each, the allegations of his first cause of action but sets out in these respectively, the charges made against him in the third, fourth, fifth and sixth counts of the criminal complaint filed against him, that is, that without being at the time an active member of the state bar, he made and filed an affidavit for an extension of time in the case in which Hattie F. Norton et al., were defendants; that he made and filed a notice of appeal from the judgment of the municipal court therein; that he prepared, served and filed objections and reservations to proposed amendments to a bill of exceptions therein; and finally, that he appeared for his said clients upon the hearing of a motion therein.

On account of his prosecution on each of these several charges he separately asks judgment on each count for items aggregating $41,100. That is to say, by reason of his prosecution on the six counts of the criminal complaint, he seeks a total judgment for $246,600.

To this complaint a joint demurrer was filed by the defendants and respondents Hoffmann, Chesebro and the City of

Los Angeles. This demurrer was sustained without leave to amend on July 12, 1938, and judgment rendered on July 18, 1938, and entered on July 20, 1938, accordingly. Demurrers interposed by certain of the other defendants were overruled and they were required to answer. Appellant, having unsuccessfully moved the trial court on July 22, 1938, to vacate its ruling on the demurrer of respondents Hoffmann, Chesebro and the city, which necessarily involved an application to vacate the judgment entered; and to permit him to amend his complaint, he now appeals from the said judgment and also from the court's said order of July 22, 1938, denying his said motion.

So far as the City of Los Angeles is concerned, appellant's complaint of the trial court's action can be dealt with in a few words. It has long been settled in this state that a municipal or other public corporation is not liable, in the absence of any special statute rendering it liable for the torts of its agents in the performance of governmental as distinguished from proprietary functions. (*Morrison* v. *Smith Bros., Inc.*, 211 Cal. 36 [293 Pac. 53]; *Yolo* v. *Modesto Irr. Dist.*, 216 Cal. 274, 276 [13 Pac. (2d) 908]; *Brindamour* v. *Murray*, 7 Cal. (2d) 73, 78 [59 Pac. (2d) 1009]; *Municipal Bond Co.* v. *Riverside*, 138 Cal. App. 267, 274 [32 Pac. (2d) 661]; *Fox* v. *Pasadena*, 78 Fed. (2d) 948.) If it could be successfully claimed that particular torts of its agents were outside the scope of their agency, the rule would evidently be *a fortiori* applicable. Moreover it is not even alleged here that any verified claim for damages was presented to the city within six months after the occurrence complained of, as required by section 376 of the Los Angeles City Charter. In the absence of such presentation, even if the claim were otherwise well founded, no action upon it could be maintained. (*Western Salt Co.* v. *San Diego*, 181 Cal. 696, 698, 699 [186 Pac. 345]; *Crescent Wharf & Warehouse Co.* v. *Los Angeles*, 207 Cal. 430 [278 Pac. 1028]; *Douglas* v. *Los Angeles*, 5 Cal. (2d) 123 [53 Pac. (2d) 353]; *White-Satra* v. *Los Angeles*, 14 Cal. App. (2d) 688 [58 Pac. (2d) 933].)

We come, then, to the asserted liability of Chesebro and Hoffmann. As to the question of whether or not they are sued or defend in their capacities as officials of the city, we need waste few words. It would appear from the complaint that what they did was under color of what was treated

as authority derived from the public offices which they held. We have just seen, however, that no liability that could be claimed to exist against them could affect the city. It is incorrect to say they are sued *as* city officials nor do we find any language in the complaint which bears that import. The recital, therefore, in their demurrer, that they are so sued is surplusage but being in the nature of a mere recital is, on the principle *falsa demonstratio non nocet*, harmless and does not alter the fact that they really demur in the only capacity in which they are really sued, that is, as individuals.

The first question, then, that merits serious examination on the present appeal is whether or not Chesebro and Hoffmann, though now sued as individuals, were acting within the scope of their official duties or authority as prosecuting officers of the city in undertaking to file and prosecute a proceeding against appellant for alleged violation of the State Bar Act.

Subdivision 8 of section 42 of the Los Angeles City Charter is to the effect:

"Whenever it shall be authorized by the laws of this state, the City Attorney shall prosecute any or all misdemeanor offenses arising upon violation of the laws of the state and appeals arising therefrom. He shall draw complaints for misdemeanors committed against the laws of this state, prosecute all recognizances and bail bonds forfeited in such misdemeanor cases and prosecute all actions for the recovery of fines, penalties and forfeitures accruing to the City or County of Los Angeles in said cases."

Section 43 of the same charter provides:

"That the office of the City Prosecutor be and the same is hereby abolished. The City Attorney is hereby declared to be the successor to the City Prosecutor."

This section 43 was adopted in 1933 as an amendment to the charter. The office of city prosecutor had previously been provided for and his appointment, qualifications and duties defined by sections 51 to 53, both inclusive, of the charter as adopted in 1925. (Stats. 1925, pp. 1051, 1052.) Said subdivision 3 of said section 53, as it stood prior to the 1933 amendment of the charter, read as follows:

"Whenever it shall be authorized by the laws of this state, the City Prosecutor shall prosecute any or all misdemeanor offenses arising upon violation of the laws of the state and

appeals arising therefrom. He shall draw complaints for misdemeanors committed against the laws of this state, prosecute all recognizances and bail bonds forfeited in such misdemeanor cases and prosecute all actions for the recovery of fines, penalties and forfeitures accruing to the City or County of Los Angeles in said cases.'' (Stats. 1925, p. 1052.)

Section 24 of the Municipal Court Act reads as follows:

''Whenever a municipal court is established in a city or city and county wherein there is an officer charged with the duty of prosecuting misdemeanor charges in the police court of such city or city and county, such prosecuting officer shall prosecute all such misdemeanor charges in the municipal court with the same rights, duties and privileges with respect thereto that he formerly exercised with respect to such charges in such police court, including the prosecution of appeals in criminal cases arising in the municipal court and the defense of all writs arising out of arrests for offenses triable in the municipal court in whatever court or courts the same may be appealed to or initiated in.''

Los Angeles is a city of the first and one-half class. (Deering's Gen. Laws, ed. 1937, vol. II, Act 5151, p. 2206, sec. 1.) Its police court existed until superseded by the municipal court by virtue of general law. (Deering's Gen. Laws, ed. 1937, vol. II, p. 2821 et seq., Act 6027.) The act last referred to, in section 2, invested such police court with jurisdiction not only of criminal cases arising out of the violation of ordinances but also generally of misdemeanors committed within the city. In section 7, it made it the duty of such prosecuting attorney as should be chosen pursuant to the city charter both to draft complaints in all misdemeanor cases of which the court had jurisdiction, whether arising under ordinances or otherwise, and to prosecute the same. As just seen, his duties under section 43 of the charter, as amended in 1933, devolved on the city attorney who is, therefore, under the above-quoted section 24 of the Municipal Court Act, charged with the prosecution before the municipal court of misdemeanors generally, at least when committed within the city.

Section 49 of the State Bar Act (Deering's Gen. Laws, ed. 1937, vol. I, p. 188, Act 591) provides that:

''Any person who, not being an active member of the state bar, or who after he has been disbarred or while suspended

from membership in the state bar, as by this act provided, shall practice law, shall be guilty of a misdemeanor.''

We see nothing in the State Bar Act which forbids the institution of criminal proceedings under section 49 thereof, in the same manner and by the same authorities as in the case of other misdemeanors. The disciplinary proceedings before administrative committees and the board of governors are not, strictly speaking, criminal in character (*In re Winne,* 208 Cal. 35, 41 [280 Pac. 113]), though sometimes referred to as *quasi*-criminal. (9 Cal. Jur. 10-Year Supp., pp. 429, 430, sec. 79; *Furman* v. *State Bar,* 12 Cal. (2d) 212 [83 Pac. (2d) 12].) Proceedings before these boards are really special in their nature and, as said in *In re Winne, supra,* are designed to determine whether or not the practitioner ''has exercised the privilege of franchise to practice law in conformity with the statutes and ethics of the legal profession''. Such proceedings in nowise exclude prosecutions under ordinary procedure for any conduct described either by the State Bar Act or any other valid statute as criminal. In fine, we do not think it even doubtful that prosecutions for occurrences within the City of Los Angeles made misdemeanors by section 49 of the State Bar Act fall within the duties of the city attorney. This being the situation, the case at bar presents many aspects of similarity to that of *Pearson* v. *Reed,* 6 Cal. App. (2d) 277 [44 Pac. (2d) 592], wherein a hearing was denied by the Supreme Court. It there appeared that the plaintiffs had been arrested and charged in the Los Angeles municipal court with petty theft. One Johnson was city prosecutor. Without his knowledge certain parties had obtained from one of his deputies, named Wygant, the complaint on which the arrest was made. Johnson, however, after learning what had occurred, proceeded to prosecute the case, which resulted in an acquittal of the plaintiffs. They, thereupon, brought action against Johnson, as well as against the complaining witnesses, for malicious prosecution and a verdict was given and judgment rendered therein in their favor. Johnson appealed and the judgment was reversed. After reciting that Johnson had acted throughout in his official capacity, the Appellate Court for the Second District went on to say (p. 280):

''In considering the sufficiency of the facts . . . to charge Johnson with liability for damages for malicious prosecution, we will assume that the findings of the jury that the prosecu-

tion was malicious and without probable cause are sustained by the evidence. There is thus clearly presented the question whether a public prosecutor, acting solely in his official capacity, is liable in damages for a criminal prosecution instituted without his knowledge but maintained and carried on maliciously and without probable cause.

"Principles of public policy declared and expounded by courts which have given the subject exhaustive consideration lead irresistibly to the conclusion that no such liability exists. No policy has been declared and maintained more firmly than the one which preserves the independence and freedom of action of judicial and *quasi*-judicial officers acting in official capacity. The exemption runs as to liability for damages resulting from official acts, although they be done without probable cause and with malice. There are but few cases in which the courts have been called upon to decide whether the immunity is extended to a prosecuting officer. The latter question has not been decided in California."

Thereupon the court proceeded to consider with some elaboration the decisions on the question of immunity, both of judicial officers and of others having functions in some sort judicial, citing, *inter alia, Bradley* v. *Fisher,* 13 Wall. (80 U. S.) 335, 337 [20 L. Ed. 646, 647], Cooley on Torts, 3d ed., vol. 2, p. 795, *Spalding* v. *Vilas,* 161 U. S. 483 [16 Sup. Ct. 631, 40 L. Ed. 780], *Downer* v. *Lent,* 6 Cal. 94 [65 Am. Dec. 489], *Turpen* v. *Booth,* 56 Cal. 65 [38 Am. Rep. 48], *Smith* v. *Parman,* 101 Kan. 115 [165 Pac. 663, L. R. A. 1917F, 698], *Griffith* v. *Slinkard,* 146 Ind. 117 [44 N. E. 1001], *Yaselli* v. *Goff,* 12 Fed. (2d) 396 [56 A. L. R. 1239] (affirmed in 275 U. S. 503 [48 Sup. Ct. 155, 72 L. Ed. 395]), and *Watts* v. *Gerking,* 111 Or. 641 [222 Pac. 318, 228 Pac. 135, 34 A. L. R. 1489]. The conclusion was reached that a public prosecutor's functions called for action on his part sufficiently partaking of a judicial nature to render it imperative that the immunity extend to him.

It is, of course, true that the facts presented in *Pearson* v. *Reed, supra,* fall somewhat short of the situation in the case at bar, in that, in *Pearson* v. *Reed,* the prosecutor had no personal knowledge in advance that his deputy intended to issue the complaint, so that whatever malice he exhibited could only have affected his prosecution of the case after it had been instituted. However, in *White* v. *Brinkman,* 23 Cal. App.

(2d) 307 [73 Pac. (2d) 254], the District Court of Appeal for the First District not only approved the doctrine of *Pearson* v. *Reed, supra,* but extended it to cover the cases of one Sherry, a deputy district attorney of Alameda County acting as prosecutor of Berkeley, one Thompson, the city manager of Berkeley, and one Brinkman, the chief building inspector of that city, all of whom were alleged to have maliciously con-, spired to cause the plaintiff's arrest for excavating on certain property without having sufficiently protected the excavation to avoid the caving in of the soil, in violation of the requirements of a city ordinance. In this case it was charged that the complaint was actually verified by Brinkman but that the other two officials named, together with certain others, were parties to the plan that resulted in its issuance and the arrest complained of. It appeared that the prosecution had been dismissed on motion of Sherry himself. The trial court sustained demurrers to the complaint and entered judgment for the defendants, and, in upholding such action, the District Court of Appeal held the immunity to extend not only to Sherry, the deputy district attorney, but also to the city manager and building inspector, on the ground that official duty required them also to see the city ordinance enforced, and, therefore, clothed them with the same immunity given to the prosecuting attorney. It will be observed that this case was like the one at bar, not only in the circumstance that the parties adjudged to be entitled to the immunity had all been charged with knowledge in advance of the proposed institution of the prosecution and with participation in the plan of instituting it, but in the further circumstance that, as in the instant case, one of them verified the complaint himself.

We think, then, that in the case before us, in sustaining the immunity of the city attorney and his deputy for acts which we hold to have been within the scope of their authority as prosecutors, the trial court was amply justified by the decisions referred to. Appellant, indeed, claims that the immunity asserted violates his rights under the Constitution of the United States and refers to certain language of Mr. Justice Field, in *Bradley* v. *Fisher, supra.* His reliance on that case, however, is founded on the assumption that Chesebro and Hoffmann were acting in a matter, the subject of which was outside their jurisdiction, and that assumption is an erroneous one. As pointed out in *Bradley* v. *Fisher, supra,* there

is a distinction between "acts done in excess of jurisdiction and acts where no jurisdiction whatever over the subject-matter exists". And in speaking of immunity for the acts complained of, which there consisted of the making by a judge of a disbarment order without previous citation or hearing, the court said:

"A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject matter. Where there is clearly no jurisdiction over the subject matter, any authority exercised is a usurped authority . . . When the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend."

■ Appellant also asserts that the requirements of section 376 of the Los Angeles City Charter, that a claim he presented to the city within six months after the occurrence complained of before the institution of an action, violates his rights under section 1 of the Fourteenth Amendment to the federal Constitution; also that his prosecution under section 49 of the State Bar Act violated his immunity from being put twice in jeopardy for the same offenses and also amounted to a denial to him of due process of law contrary to the inhibitions of article V of the amendments to that instrument. These contentions are too unsubstantial to justify discussion.

We think that the trial court was correct in holding that appellant's complaint stated no cause of action as against either the City of Los Angeles, Chesebro or Hoffmann.

■ Appellant further complains that he ought to have been allowed to amend his pleadings. The demurrer, as we saw, was sustained on July 12, 1938. The minutes show that at that time the appellant was personally present in court. The record fails to show that he at that time made any application for leave to amend. On July 18, 1938, however, he filed a petition for leave to amend, which despite its elaboration, amounted merely to an argument and suggested no additional facts which could form the subject for such amendment. It does not appear that this petition was called to the atten-

tion of any judge of the superior court until July 20, 1938, being the same date on which the judgment, already signed and filed on July 18th, was entered. On July 20th the presiding judge made an order setting down said petition or motion for leave to amend for hearing before the trial judge on July 22d. On that day the same was heard and denied. In these circumstances we find no error in such denial.

The judgment and order refusing to vacate the same, or to vacate the court's ruling on the demurrer, and refusing leave to amend, are affirmed.

Barnard, P. J., and Griffin, J., concurred.