483 P.2d 430

**Troy BLONQUIST and Grace Blonquist, his wife, Plaintiffs and Appellants,**

**v.**

**SUMMIT COUNTY, a division of the State of Utah; Richard W. Durrant, Carlos L. Porter, Kenneth E. Woolstenhulme, Ronald R. Robinson and Belvon Blonquist, as individuals, Defendants and Respondents.**

No. 11908.

Supreme Court of Utah.

April 2, 1971.

Crockett, J., concurred as to remand but dissented in part as to basis thereof and filed opinion.

Henriod, J., did not participate.

D. Eugene Livingston, William J. Cayias, Salt Lake City, for plaintiffs and appellants.

Robert F. Orton, Tel Charlier, Salt Lake City, for defendants and respondents.

ELLETT, Justice:

Plaintiffs filed a complaint, alleging two causes of action, the first against Summit County, a body politic, and the second against the five named defendants individually, who are the three commissioners, the county sheriff and the county road supervisor. The defendants involved in the second cause of action moved for summary judgment, which the trial court granted on the ground that a public offiicer engaged in the performance of his duties cannot be held personally liable for the mistake or errors of judgment absent a showing of malice, fraud, or corruption. Plaintiffs appealed, claiming that for 32 years past they have owned certain real property over which a private road exists and that for many years past they have maintained a locked gate across the road to prevent unauthorized persons from crossing their land.

The defendant county commissioners by resolution determined that the road should be opened to the public. The plaintiffs sent a letter of protest to the county, where-

in they apprised the commissioners of their claim. The commissioners called a public hearing for the purpose of discussing the road and to determine if the county should continue to maintain it. The plaintiffs and their attorney attended the meeting. Several residents of the county were present and informed the commissioners that they personally had used the road in question for a period of time in excess of ten years.[1]

Acting upon the advice of the county attorney, the commissioners directed the sheriff and road supervisor to remove the gate and to install a cattle guard across the road.

This action was begun to recover for a claimed trespass.

There are two questions involved in this appeal, viz.: 1. Are there any disputes as to material issues of fact? 2. Are the defendants entitled to prevail as a matter of law?

■ There is a dispute as to whether the road was public or private. However, under the holding of the trial court it was immaterial whether it was the one or the other. The court believed that officers acting in line of duty were immune from suit. If this were a case involving officers acting in line of duty under a writ fair on its face issued by a court having

---

1. Section 27–12–89, U.C.A.1953 (Replacement Vol. 3), provides: "A highway shall be deemed to have been dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years."

jurisdiction, the belief would be well founded. However, officers are not protected when they tear down fences not in a public way. The law is stated in 40 C.J.S. Highways § 225 as follows:

> Highway officers or other public authorities whose duty it is to keep highways in repair and free from obstructions have authority under their general powers or by express statutory provisions summarily to remove obstructions, notwithstanding the statute gives a remedy by action for a penalty. However, such authority does not exist where the road is not open and legal, or where the obstruction is not a nuisance.

■ An obstruction in a private road is not a nuisance, and as stated in 39 Am.Jur. 2d, Highways, Streets, and Bridges, § 327:

> * * * (A) municipality or other public agency cannot by its mere declaration that a structure is a nuisance subject it to removal, * * * In abating alleged nuisances public officers act at their peril and will be liable in damages if the alleged nuisance is not one in fact.

A case similar to the instant matter is that of Kelsey v. Burgess, 58 Hun 608, 12 N.Y.S. 169 (1890), where the defendant acting under the orders of the commissioners of highways removed a fence erected across the road by the plaintiff. The defendant proved a certificate or order of the commissioners ascertaining and describing the road as a highway. The trial court dismissed the complaint, but on appeal the court reversed, saying:

> * * * The certificate did not, therefore, furnish of itself any defense for the trespass. * * * The court refused the plaintiff the right to prove that the same had not been used as a highway, and was not a public highway, either by use or dedication. If the certificate had adjudicated the road to have been used for 20 years, it was not conclusive. The land-owner had the right to have the fact passed upon by a jury.

Likewise in Labo v. Asam, 143 Mich. 24, 106 N.W. 281 (1906), Asam, the commissioner of highways, and others tore down Labo's fence, which they claimed to have done in the performance of their official duty. Asam's predecessor, as highway commissioner, claiming the fence obstructed a highway, made an order that it be removed and gave Labo notice to remove it. Labo ignored the order, and Asam thereafter did his duty as he saw it. Labo then brought an action of trespass. The defendants put the order of removal in evidence, and the trial court ruled for Labo. The Supreme Court affirmed, saying, "The order is not of itself proof of the facts stated in it, and, in the absence of such proof, furnishes no justification."

Another case is Danielson v. Kyllonen, 111 Minn. 47, 126 N.W. 404 (1910). There,

appellant had constructed a fence on his own land. The respondent, as assistant road inspector, claimed that the fence was in the highway and directed the appellant to remove it. Upon appellant's refusal to do so, respondent acting on behalf of the public took the fence down. The appellant then brought an action of trespass. At the close of appellant's case the trial court dismissed the action. The Supreme Court reversed, and in doing so said:

> Although appellant failed to prove the exact location of his fence with respect to the section line, and to the road as traveled, the evidence fairly shows that the fence was located upon appellant's land, and a prima facie case was made out. It was admitted by respondent, in his answer, that he took down and removed the fence; and he justified his conduct upon the ground that the fence was within the limits of a public highway and that he was acting as a public official. In our opinion, the burden was upon respondent to prove what he alleged, and, having failed to do so, it was error for the trial court to dismiss the action at the close of appellant's case.

A case involving the protection afforded to public officers is Miller v. Horton, 152 Mass. 540, 26 N.E. 100. In an opinion written by Justice Holmes, the court held that under a law authorizing summary destruction of animals having farcy or glanders, with no provision for compensa- tion to owner, an order of commissioners on contagious diseases of domestic animals, certifying that a certain horse examined on that date was adjudged to have a contagious disease known as glanders and directing that he be killed, was not a protection to the officers executing the order in a subsequent action by the owner against them, where it appeared the animal was not in fact infected with the disease.

The case of Garff v. Smith, 31 Utah 102, 86 P. 772 (1906), is not to the contrary. There the defendant was a sheep inspector who quarantined plaintiff's sheep because they were afflicted with an infectious disease. The place where the sheep were quarantined contained a shrub called greasewood, and as a result of eating it and thereafter drinking water, some of the plaintiff's sheep died. The action was for negligence and not trespass. This court held that the selection of the place of quarantine was a matter of quasi-judicial determination and not a ministerial act. Had defendant acted in a ministerial instead of a quasi-judicial capacity, he would not have been protected. That case involved a situation where the sheep *were* infected.

█ The destruction of the gate in the case now before us involved a ministerial function only. The determination of the status of the road was for the court and not for the county commissioners. Their order that the road was public had no va-

lidity, and, the plaintiffs had a right to submit that question to a jury for determination.[2]

There is one other matter which requires our attention.

Section 27–12–135, Utah Code Annotated 1953 (Replacement Vol. 3), provides that if any person places an obstruction in a county road, the authorities may (1) remove it or require the person to remove it; (2) give written notice to the person to remove it within ten days, and if he does not remove it, then they themselves may do so and collect costs and penalties from that person; or (3) if such person denies the existence of the obstruction or refuses to remove it or to permit it to be removed, bring an action to abate the nuisance.

It will be observed that these remedies are permissive, and neither one is conclusive of the others. In fact, there existed at common law a right to summarily remove obstructions from a highway.[3] Statutes such as ours do not restrict the common law right but afford cumulative remedies.[4]

In the instant matter the county authorities could have summarily removed the gate if the road was a public one. The fact that they gave notice to the owners

does not make a summary removal unlawful if, in fact, the road is public.

There are unresolved issues of fact to be determined in this matter, and a summary judgment cannot be had at this time. The judgment is reversed and the matter remanded for such further proceedings as may be necessary. No costs are awarded.

CALLISTER, C. J., and TUCKETT, J., concur.

HENRIOD, J., does not participate herein.

CROCKETT, Justice (concurring as to the remand for trial, but dissenting in part as to the basis thereof).

I concur in the remand of this case for a trial. But it is my opinion that it should be for a plenary trial on all issues, including whether the defendant public officials failed to act in good faith; and that unless that proposition is proved, no liability should be imposed upon them.

The proposition I thus advocate is in conformity with the theory of the case as it has thus far proceeded, according to the contentions made by the plaintiffs themselves in the trial court, and in this court on appeal. Our review should be on the

---

2. New York & L. B. R. Co. v. South Amboy, 57 N.J.L. 252, 30 A. 628, 632 (1894).

3. 1 Blackstone 358.

4. 39 Am.Jur.2d, Highways, Streets, and Bridges, § 327.

same basis upon which the plaintiffs have sought their remedy.

In paragraph 3 of their complaint the plaintiffs allege that the acts of the defendants were:

* * * intentional, wilful and deliberately done, the defendants knowing full well that the acts they committed were unlawful and wrong. * * *

This is also the entire tenor of their brief on appeal. In arguing that the summary judgment should not have been granted because there were disputed issues of fact, they make numerous statements concerning their claim of lack of good faith of the defendants. I excerpt some of these from their brief:

* * * Therefore, the pleadings themselves demonstrate conflicting claims going to the question of ownership of the property and the *good faith action of the respondents.* * * *

* * * Therefore, *a factual question exists as to whether the actions of the commissioners were in good faith* or whether they were acting arbitrarily and wrongfully * * *.

* * * *A direct dispute exists as to* the maintenance of road. All of these facts would relate *to the question of good faith* on the part of the commissioners

* * *. There was therefore a factual dispute * * *.

* * * The quality of the evidence that was before the commission would be a matter of direct relevance on the *question of the good faith* of their actions.

* * * where respondents [defendants] were on full notice of the claims of the appellants * * * *a factual case for malice or intentional wrongdoing is clear.*

This court, having determined that the trial court was in error in refusing to accord the plaintiffs the privilege of a trial, should not go beyond what the plaintiffs themselves have sought in the lower court, and on this appeal, and inject into the case a new theory, particularly one which is not well grounded in either law or justice as applied to the instant situation. In so saying, I am nevertheless in hearty agreement with these propositions: (1) that there was a genuine dispute as to a material fact: was the road public or private? and (2) that the parties have a right to have that question determined by a court or jury. But that does not answer the further question as to who had the responsibility to initiate proceedings for that purpose. At the point when the impasse in the dispute was reached, the plaintiffs could very well have done so. But

instead of seeking a solution by that peaceable and proper means, they resorted to the strong-arm tactics of physically closing the road. In response to this action, the defendant public officials were concerned enough about acting with propriety that they held a hearing, heard witnesses on both sides, and then acted under the advice of the county attorney. Under such circumstances it is difficult indeed for me to see justification for the position which seems to result from the main opinion. It appears to say in effect to the private parties (plaintiffs) : instead of going to court, it is perfectly all right for you to resort to strong-arm tactics and close the road, and thus force the public officials to go to court. On the other hand, it seems to say to the public officials, who were concerned enough about acting with propriety to hold a hearing, hear witnesses on both sides, and then act under the advice of the county attorney, that if they made a mistake in judgment as to the actual ownership of the road, they must respond in damages. This in my judgment is neither justice nor good law, and will result in more harm than good in our commonweal. Well reasoned and well considered authorities so affirm, including outstanding texts in the field, as will appear below.

It is of great importance to public officials,[1] to the governmental unit they act in behalf of,[2] and even more important to the stability and efficiency of government, that public officials should not be held liable for damages for acts done in good faith in the performance of their duties where the exercise of any discretion is involved, even though they may make a mistake in judgment. The general law is quite uniformly to that effect.[3] It is well stated in the recent case of Gross v. New York Liquor Authority.[4] In a suit for damages for wrongful refusal to grant a liquor license, the granting of a summary judgment in favor of defendant was sustained on appeal, the court stating :

* * * public officers in performing their duties of a discretionary nature are "immune from liability even if the act is wrongful * * *."

1. See discussion of the necessity that public officers be protected in order to insure effective administration, Kenneth Culp Davis, "Administrative Officers' Tort Liability," 55 Mich.L.Rev. 201, 233 (1956) ; cited in Sheffield v. Turner, 21 Utah 2d 314, 445 P.2d 367.

2. This has become of special importance since the enactment of the waiver of governmental immunity (known as the Tort Claims Act), Chapter 139, S.L.U.1965.

3. See Annotation, 90 A.L.R. 1481, and numerous cases cited at p. 1482 in support of the statement "[Highway officers] * * * are not, however, personally liable for acts done honestly in the exercise of the discretion which the law gives them in constructing or maintaining a highway, *although their acts result in a trespass* or damage to an abutting property owner." Cf. cases contra in same article.

4. 60 Misc.2d 413, 303 N.Y.S.2d 126 (1969).

That case in turn cites the case of Rott-kamp v. Young.[5] In the latter case, in holding that even though the plaintiff was entitled to a building permit as a matter of right, the building inspector was not liable for its refusal, the court stated:

> In 1883 the Court of Appeals considered the rule to be well settled that "no public officer is responsible in a civil suit for a judicial determination," * * *.
>
> * * * To fasten responsibility for damages on a public officer for the exercise of judgment or discretion in favor of one disappointed by the result *"would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."*

I am not unmindful that liability of a public official has sometimes been made to depend on whether he made a mistake such that he was acting in "excess of his jurisdiction" or "beyond his authority" so that it is said he made a "mistake in law" as compared to situations where he made a mistake in judgment on questions of fact. This in my mind is a distinction based upon semantics which is quite unfair and unrealistic in practical application. It is submitted that in all instances the question of a public official's responsibility should depend on whether he acted in good faith, whether the determination is of law or fact. Eminent authorities support this view.

The principle is aptly summarized by Professor Prosser, in his treatise on torts:

> * * * Public servants would be unduly hampered and intimidated in the discharge of their duties, and an impossible burden would fall upon all our agencies of government, if the immunity to private liability were not extended in some reasonable degree, to those who act improperly, *or exceed the authority given.*
>
> * * * [where] the officer has acted with proper motives and with due care and diligence in the performance of his official duties, he should neither suffer for an honest and reasonable mistake in the effort to carry out his responsibility to the public, nor escape liability for official negligence because he has been charged with that responsibility.[6]

The problem relating to acting "in excess of jurisdiction" is capably and perceptively discussed by Professor Kenneth

---

5. 21 A.D.2d 373, 249 N.Y.S.2d 330, aff'd 15 N.Y.2d 831, 257 N.Y.S.2d 944, 205 N.E.2d 866 (1964) ; see also Stiebitz v. Mahoney, 144 Conn. 443, 134 A.2d 71, stating the same acting in good faith rule, police chief held not liable for assault committed by one of his officers; Lincoln Bus Co. v. Jersey Mut. Cas. Ins. Co., et al., 112 N.J.Eq. 523, 162 A. 915.

6. Prosser, Law of Torts (3d Ed.) Sec. 126.

Culp Davis [7] in his article in the Michigan Law Review. In explaining the unreasonableness and the incongruity of recognizing the protection public officials have for mistakes made in good faith as to other matters, but withholding it where a mistake is made in good faith which may go to his authority or jurisdiction and thus may be termed a mistake in law, the professor states:

> The proposition that the same officer exercising the same functions may be immune from liability for malicious action *where no jurisdictional mistake is involved* but may be subject to liability for a *reasonable and non-negligent mistake as to jurisdiction* may seem so incongruous as to be almost capricious, and yet a good deal of case law supports that proposition. Such case law rests largely upon *historical accident and sterile logic and seems to have little to do with common sense.*

The impracticality and the unfairness in the so-called "excess of jurisdiction" and the "acting beyond authority" doctrines is that they compel a public official, often not versed in the law, to make a decision at his peril on such questions; and leave him with the duty of discharging burdensome responsibilities without any more protection than any private individual would have. I agree with Professor Davis that the law should not be so carpricious as to hold a public official who acts in good faith responsible for making a mistake in judgment, whether it be one of law or of fact.

The general principle underlying this case was dealt with in our State in the early case of Garff v. Smith.[8] On appeal from a judgment against the deputy state sheep inspector for damages in alleged wrongful quarantining of sheep, the court pointed out that where the officer had to use some judgment and discretion "* * * [he] cannot be made personally liable * * * unless the act complained of be willful, corrupt, or malicious, or without the jurisdiction of the officer." The case was reversed because there had not been a determination of those issues and was remanded for a new trial, and the plaintiff was given leave to amend his complaint.

This same rule in practically identical language to that just quoted was stated by this court in Logan City v. Allen,[9] wherein it was held that county commissioners and state tax commissioners were not personally liable in connection with accepting a reduced amount of taxes in compromise.

7. "Administrative Officers Tort Liability," see footnote 1 above.

8. 31 Utah 102, 86 P. 772.

9. 86 Utah 375. 44 P.2d 1085; see also Richardson v. Capwell, 63 Utah 616, 176 P. 208.

In the recent case of Anderson v. Granite School District,[10] in sustaining a dismissal of the action against the school board members for destroying an irrigation ditch, we said:

> * * * It would be quite impractical and unfair to require them to act at their own risk. This would not only be disruptive of the proper functioning of public institutions, but undoubtedly would dissuade competent and responsible persons from accepting the responsibilities of public office. Accordingly, it is the settled policy of the law that *when a public official acts in good faith, believing what he does to be within the scope of his authority* and in the line of his duty, *he is not liable for damages even if he makes a mistake* in the exercise of his judgment.

The principle here advocated should be applicable for even stronger reasons where the public official has sought and relied on the advice of counsel, as was done here.[11]

It is true that Sec. 27–12–135, U.C.A. 1953, referred to in the main opinion, pro-

vides three ways for public authorities to deal with an obstruction on a public highway. It is important to note that they are all *permissive* and optional. There is no mandate upon the commission that it *must* bring an action to abate the nuisance. Subsection (3) of that statute simply says that they *may* do so. But subsection (1), the *first* option, says that they *may* remove the obstruction. This is in accord with the statement from McQuillin [12] that:

> A municipality [public authority] has the undoubted right to remove summarily any obstruction in a public way which constitutes a public nuisance and unreasonably hampers or prevents the proper use of such a way by the public.

It is submitted that the averments in the respective affidavits present diametric dispute as to material facts upon which a proper solution of the controversy over the ownership and right to use this road depends: whether the plaintiffs had "maintained a locked gate on this road"; whether the public had used it freely for many years (in excess of the ten years needed for presumed dedication), and whether the

---

10. 17 Utah 2d 405, 413 P.2d 597; Hjorth v. Whittenburg, 121 Utah 324, 241 P.2d 907 (1952).

11. Somewhat analogous are a number of Utah cases in actions for malicious prosecution based upon this principle. The reasoning is that seeking the advice of counsel and acting thereon supports the good faith and negatives any malice, Potter v. Utah Driv-Ur-Self System, 11 Utah 2d 133, 355 P.2d 714; Wendelboe v. Jacobson, 10 Utah 2d 344, 353 P.2d 178; Cottrell v. Grand Union Tea Co., 5 Utah 2d 187, 299 P.2d 622; see also White v. Towers, 37 Cal.2d 727, 235 P.2d 209, 213, 28 A.L.R.2d 636; Norton v. Hoffmann, 34 Cal.App.2d 189, 93 P.2d 250.

12. 10 McQuillin, Municipal Corporations (1966 Rev. Vol.) § 30:118.

397

road and the bridges thereon had been maintained by the county.

Upon the basis of what I have said herein, I urge that the remand should be for a determination of all of the issues herein mentioned; that the rights in this road should be tried and determined as they existed before either resorted to the arbitrary action of the closing, and then the reopening, of the road; and that in connection with the conduct of the defendant county officials, their rights should be determined on the basis as the plaintiffs have contended, and that they should have the protection I have advocated herein: that unless they acted in bad faith, there should be no personal liability imposed upon them. (All emphasis added.)