## MISTER v. BROWN et al.

(District Court, D. Maryland. February 16, 1894.)

FISHERIES—STATE OYSTER NAVY—SHOOTING BY OFFICER—LIABILITY FOR.
　　Code Md. art. 72, which regulates the oyster fishery in the waters of the state, provides for the maintenance of vessels to guard the waters, directs their commanders to arrest all violators of the law and seize offending vessels, and authorizes them to use arms, in their discretion, for the enforcement of the law. Section 25 directs the board of public works to furnish the necessary arms and ammunition for the several vessels; and Act Md. 1886, c. 296, vests in it the appointment of a commander in chief and deputy commanders for the state fishery force, and the supervision of the commander in chief in his control of the force. *Held,* that the action of the board in appointing officers and furnishing ammunition is purely official and ministerial, and its members are not personally liable for the abuse by a deputy commander of the discretion vested in him by statute in the matter of using such arms.

In Admiralty. On exception to libel. Libel by Jacob Mister against Frank Brown, Marion De K. Smith, Spencer C. Jones, Thomas C. B. Howard, and Waters Ford. Exception sustained.

Thomas S. Hodson, for complainant.

John P. Poe, Atty. Gen., for board of public works.

MORRIS, District Judge. This is a libel in admiralty to recover for an alleged maritime tort committed upon navigable waters within the admiralty jurisdiction of this court. The libelant sues for alleged pecuniary loss suffered by reason of the death of his son, John W. Mister, who was killed by a shot fired from the sloop Maria, one of the vessels of the Maryland state fishery force. Libelant's son was master of the oyster-dredging schooner Ostrich, and when shot was fleeing from the sloop Maria, whose commander, Waters Ford, was attempting to arrest him, and to seize his schooner, for illegal dredging in the waters of the Chesapeake bay, within the territorial limits of Maryland. The defendants (other than Waters Ford, who was in actual command of the sloop Maria) are the governor, the comptroller, and the treasurer of Maryland, who constitute the state board of public works; and Thomas C. B. Howard, another defendant, is the commander in chief of the state fishery force. They are all sued as individuals, and recovery is sought against them personally. The questions to be now decided arise on the exception to the sufficiency of the libel pleaded in the answers of the members of the board of public works and of the commander in chief of the state fishery force.

The law of Maryland (Code, art. 72) prescribes regulations for taking oysters in the waters of the state, and directs the deputy commanders in charge of the vessels of the state fishery force to constantly guard the waters of their respective districts, and to arrest and bring to justice all violators of the law, and to seize offending vessels. By section 25 the board of public works are empowered and directed to purchase for each guard boat such arms and ammunition as may be necessary to make them efficient, and the same section directs that the officers of such boats shall be authorized to use such arms, in their discretion, for the enforcement of the provisions of the oyster laws of the state. The board of public works is composed of the governor, the comptroller, and the treasurer of the state. This board is established by the constitution of Maryland, which confers upon it the power to hear and determine matters affecting the public works of the state, and to supervise those in which the state is interested as stockholder or creditor, and to vote its stock. By the act of 1886, c. 296, the additional duty was imposed upon the board to supervise the commander in chief of the state fishery force in his control and direction of the force, and to appoint the commander in chief for the whole force and a deputy commander for each vessel. Neither the commander in chief nor any member of the board of public works was present when the shot was fired that killed libelant's son. It was not the duty of any one of them to be anywhere in that locality, the law providing that their office shall be in the city of Annapolis. The participation in the alleged tort charged against them in the libel is that they had caused arms and ammunition to be put on the sloop Maria, and "wrongfully directed,

authorized, or allowed Waters Ford, the master, and the crew, of said vessel, to use said arms, in their discretion, in the enforcement, or supposed enforcement, of the oyster laws of Maryland," and "that the authority given and the license allowed by defendants to the officers of the oyster police force to shoot persons suspected of violations of the oyster laws, while fleeing, was without warrant of any valid law." The fault charged against the members of the board of public works and the commander in chief is, substantially, as was conceded in argument, that they did not instruct the commander of the sloop Maria to refrain from shooting when the circumstances were such as are alleged to have existed when Mister was shot.

The connection of these defendants with the state fishery force is purely an official connection. The vessels belong to the state of Maryland, and the salaries and expenses are paid by the state. The board of public works (section 27) are empowered to appoint a suitable person to command the force, and a deputy commander for each vessel. The commander and deputy commanders each takes an oath of office, and gives a bond to the state for the faithful performance of his duties as prescribed by law. The duties of the deputy commanders are prescribed by law, and not by the board of public works, nor by the commander in chief, (sections 30, 31, 36;) and, while the board of public works are directed to purchase arms for the vessels, (section 25,) it is the law itself which declares that "the officers of such boats shall be authorized to use such arms in their discretion for the enforcement of the provisions of this article." It is apparent that there is no duty imposed upon the board of public works or the commander in chief to instruct the deputy commanders, or their crews, under what circumstances they may or may not shoot, in the enforcement of the law. It is not, therefore, the members of the board of public works or the commander in chief who allowed or directed or authorized the commander of the sloop Maria to use arms, in his discretion, in the enforcement of the law, but the legislature of Maryland. It is not specifically alleged in the libel that the board of public works or the commander in chief ever gave orders to Deputy Commander Waters to shoot fleeing offenders, and it is not contended in argument that any such proof is forthcoming. Nothing is alleged, and it is not contended that anything can be established against the board of public works and the commander in chief, except that they have furnished the vessels with arms, as required by the law, and have instructed the officers to enforce the law. The manner of enforcing the law has been left, as the statute has left it, to the individual discretion of the deputy commanders. For this purely official and ministerial action, in my judgment, neither the members of the board of public works nor the commander in chief can be held personally liable, even though it should be established by proof that the deputy commander in charge of the vessel abused the discretion committed to him by the statute. It was held by the supreme court of the Unit-

ed States in Robertson v. Sichel, 127 U. S. 515, 8 Sup. Ct. 1286, that "a public officer or agent is not responsible for the misfeasance or positive wrongs, or for the nonfeasance or negligence or omissions of duty, of the agents or servants or other persons under him, in the discharge of his official duties." In order to charge the members of the board of public works or the commander in chief, it must be alleged and proved that they have been guilty of personal neglect, misfeasance, or wrong.

It is urged that the law which directs the board of public works to supply the guard boats with arms and ammunition, and authorizes the officers of the boats to use such arms, in their discretion, for the enforcement of the law, is unconstitutional, in that it authorizes the officers of the vessels to deprive suspected persons of their lives without due process of law. This objection, it is plain, is addressed, not to the constitutionality of the law itself, but to the consequences of its possible abuse. The necessity for arming the state's vessels cannot be gainsaid; otherwise, they would be at the mercy of any combination of lawbreakers who saw fit to combine together to attack or resist them. How far the law is a protection to the particular act of the officers or men who used the arms in this case, is a question which does not now arise on these exceptions, and has not been argued or considered. I am of opinion that the exception contained in the answer of the members of the board of public works and of the commander in chief to the libel is well taken, and it is sustained.