## BROWN v. RUDOLPH et al.

Court of Appeals of District of Columbia.

Submitted March 9, 1928. Decided April 2, 1928.

No. 4635.

Insane persons ⚖️17—District of Columbia commissioners are not liable in damages for mistake in instituting lunacy proceedings in exercise of statutory discretion (24 USCA §§ 215–220).

In preliminary proceedings looking to formal commitment of insane person, commissioners of District of Columbia exercise a discretion vested in them by Act April 27, 1904 (24 USCA §§ 215–220), and are not liable in damages, though they made a mistake.

Appeal from the Supreme Court of the District of Columbia.

Action by Robert W. Brown against Cuno H. Rudolph and another. Judgment for defendants, and plaintiff appeals. Affirmed.

G. F. Curtis, T. L. Jeffords, and E. C. Dutton, all of Washington, D. C., for appellant.

W. W. Bride and Ringgold Hart, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Judge. Appeal from a judgment for the defendants (appellees here), former commissioners of the District, in a suit against them for damages alleged to have resulted from the institution of lunacy proceedings against plaintiff (appellant here).

The material facts gleaned from the mass of irrelevant averments of the declaration are substantially as follows: On October 19, 1923, Detective Sergeant Darnell of the metropolitan police made affidavit in which he stated, "I have apprehended and detained Robert William Brown, and from what I know and have seen of him I believe him to be insane or of unsound mind, incapable of taking care of himself or his property, and, if permitted to remain at large or go unrestrained in the District of Columbia, the rights of persons and property will be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable." Thereafter, on October 20, 1923, Emily A. Nickerson and Lena G. Mahoney, residents of the District of Columbia, made affidavit concerning Brown's mental condition; and, on the same day, Drs. D. Percy Hickling and Norman P. Scala (qualified physicians) certified that they had within 48 hours "made an examination of the mental conditions of Robert W. Brown, and in our judgment said Robert W. Brown, is of unsound mind and should not be allowed to remain at liberty and go unrestrained, and that said person is a fit subject for treatment on account of his mental condition."

Thereupon defendants in their official capacity filed in the Supreme Court of the District a petition for writ de lunatico inquirendo. The writ was issued; a hearing was had; and the jury found Brown to be insane. The court confirmed the verdict. Brown was committed to St. Elizabeth's Hospital for the Insane, where he remained for 33 months.

We here quote from the declaration: "The making and filing of such petition and prosecuting it as aforesaid, if and when done in a legal and proper way in a case in which the facts and circumstances require and justify it, was and is within the rightful province of defendants' act as commissioners for the District of Columbia. But said lunacy proceedings against plaintiff were not in the facts and circumstances of the case, rightful, lawful or proper and defendants in said proceedings disregarded the facts and circumstances knowingly, negligently and unlawfully, proceeded without regard to same, and by reason thereof their acts in such lunacy proceedings became and were and are wholly unauthorized and unwarranted and were and are irregular, unlawful and unjust." The same idea is reiterated in varying forms of expressions.

To the declaration, a demurrer was interposed, and the court sustained the demurrer. This appeal was prosecuted.

The Act of April 27, 1904, entitled, "An act to authorize the apprehension and detention of insane persons in the District of Columbia, and providing for their temporary commitment in the Government Hospital for the Insane, and for other purposes" (33 Stat. 316), prescribes the procedure to be followed for the temporary commitment of insane persons.

Section 1 of that act (24 USCA § 215) authorizes any police officer of the District to apprehend and detain, without warrant, "any insane person or person of unsound mind found on any street, avenue, alley, or

other public highway, or found in any public building or other public place within the District of Columbia." Whereupon, it is made the duty of such officer "to immediately file his affidavit with the major and superintendent of said metropolitan police that he believes said person to be insane or of unsound mind, incapable of taking care of himself or herself or his or her property, and if permitted to remain at large or to go unrestrained in the District of Columbia the rights of persons and of property will be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable."

Section 2 (24 USCA § 216) authorizes the superintendent of police to order the apprehension and detention, without warrant, of any indigent person alleged to be insane or of unsound mind or any alleged insane person of homicidal or otherwise dangerous tendencies found elsewhere in the District of Columbia than in the places mentioned in section 1, whenever two or more responsible residents of the District of Columbia shall make and file affidavits with the superintendent of police setting forth that they believe the person therein named to be insane or of unsound mind, the length of time they have known such person, that they believe such person to be incapable of managing his or her own affairs, and that such person is not fit to be at large or to go unrestrained, and if such person is permitted to remain at liberty in the District of Columbia the rights of persons and of property will be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable, and that such person is a fit subject for treatment on account of his or her mental condition; provided, that before the superintendent of police shall order the apprehension or detention upon affidavits, "he shall, in addition thereto, require the certificate of at least two physicians who shall certify that they have examined the person alleged to be insane or of unsound mind, and that such person should not be allowed to remain at liberty and go unrestrained, and that such person is a fit subject for treatment on account of his or her mental condition."

Section 3 (24 USCA § 217) authorizes the commissioners of the District of Columbia to place in the Government Hospital for the Insane in the District, whose superintendent is "authorized to receive, upon the written request of the said commissioners, for a period of time not exceeding thirty days, indigent persons alleged to be insane or of unsound mind, residents of or found within the District of Columbia, and alleged insane persons of homicidal or otherwise dangerous tendencies, residents of or found within the said District, so apprehended and detained as provided in sections one and two of this act, pending the formal commitment of such persons to said hospital as provided by law, or their transportation to their homes when their places of residence are ascertained by the proper officials charged by law with that duty."

Section 4 (24 USCA § 218) makes similar provision for temporary commitment in hospitals other than the Government Hospital for the Insane, and provides that if, pending the formal commitment of such insane person or person of unsound mind, the superintendent of the Government Hospital for the Insane, in the case of the commitment of a person to that hospital, or if two or more surgeons of the police and fire departments, in the case of persons detained at any police station house or house of detention, shall certify in writing to the commissioners that such person is not insane or that he or she has recovered his or her reason, the official of the Government Hospital for the Insane or the hospital or asylum in which such person is confined, or the superintendent of police, if such person is confined in a police station house or in a house of detention, "shall discharge such alleged insane person or person of unsound mind forthwith and immediately report such action to the commissioners of the District of Columbia."

The record discloses that there was substantial compliance with the provisions of the act of 1904 in the apprehension and temporary commitment of Brown. No certificate having been filed with the commissioners, as provided by section 4, that Brown was not insane or that he had recovered his reason, it became the duty of the commissioners to institute lunacy proceedings looking to "formal commitment." This they did; and, while there is no averment of irregularity in the court proceedings, it is sought in this action to charge defendants with responsibility for the result of those proceedings. Brown's incarceration in St. Elizabeth's Hospital subsequent to his temporary commitment was in virtue of the finding of the jury and the judgment of the court that he was insane. In the preliminary proceedings, the defendants, as commissioners, were exercising a discretion with which they were vested by law, and, even though they had made a mistake, would not have been liable to respond in damages. Kendall v. Stokes et al., 3 How. 87, 98, 11 L. Ed. 506; Spalding v. Vilas, 161

U. S. 483, 16 S. Ct. 631, 40 L. Ed. 780; De Arnaud v. Ainsworth, 24 App. D. C. 167, 5 L. R. A. (N. S.) 163; Mellon v. Brewer, 57 App. D. C. 126, 18 F. (2d) 168.

The appeal is without merit, and the judgment is affirmed, with costs.

Affirmed.