### UNITED STATES v. CARRILLO et al.

### No. 12517-S.

District Court, S. D. California, Central Division.

Aug. 28, 1935.

Stanley Visel and J. Willard, both of Los Angeles, Cal., for Carl Carillo.

C. B. Conlin and Ernest R. Simon, both of Los Angeles, Cal., for August Wunderlich.

C. B. Simon and Ernest R. Simon, both of Los Angeles, Cal., for Walter Miller.

Gladys Towles Root, of Los Angeles, Cal., for Frank Dudley.

STEPHENS, District Judge.

The defendants were on trial under indictment alleging in four separate counts that they conspired to commit acts of piracy and to rob and plunder, and that they did commit acts of piracy and did rob and plunder a gambling vessel, the Monte Carlo, anchored off the shore of California.

This is a motion to dismiss all counts of the indictment upon the ground that the court should take judicial knowledge that the vessel allegedly robbed was within the territory of the state of California at the time of the alleged robbery.

The state of California was admitted into the nation of the United States shortly after the territory within its limits had become unquestionably American through the Treaty of Guadalupe Hidalgo as it was proclaimed July 4, 1848, by the President of the United States. It may be claimed that California was an independent nation for a short time from the raising of the Bear Flag at Monterey to the admission into the Union, but as a functioning government it never was recognized by other nations. No territorial government was ever established by the United States for California. It may be said, therefore, that the government under the California Constitution of 1849 succeeded the Mexican sovereignty with all of its rights, and, of course, the Mexican sovereignty succeeded the Spanish sovereignty.

There is, strictly speaking, no law between nations, except that which is agreed upon between them through treaties, and sovereignty with its geographical limits is, in the main, a question of dominion. From

a very early date nations have generally acquiesced in the proposition that a nation's territory over which its sovereignty extends ends 3 miles from and into the bordering ocean. Ocean Industries, Inc., v. Superior Court, 200 Cal. 235, 252 P. 722. Such three miles was not a line following the exact contour of the coast, which would seem impracticable, but was three miles from the line joining headlands or points between which lie indentations or bays. But a moment's thought upon the subject is sufficient to cause appreciation of the fact that the rule of reason must be read into this formula. As, for instance, if the whole of the land bordering the Gulf of Mexico were under one sovereignty the whole of such vast sea could not well be considered as within such country's sovereignty. The practice of governments, explorers, geographers, etc., has generally confined such formula to bays which are not in fact open sea, and so the coasts of the continents have been mapped, the points between which the sea curves inward have been designated, and the waters between such points have been designated as bays. A consultation of the old discovery and navigation maps of the Spaniards, and as well the English, will show this to have been the practice on the Pacific Coast of North America, and it does not appear to have been disturbed by the Mexican sovereignty. See citation to maps herein. The Constitution of California (Const.Cal. 1849, art. 12) in its boundary description provides that the 3-mile limit shall be followed, and that the bays and harbors along the coast are included. It would seem to follow logically that United States national and California state sovereignty have always been in accord with this rule. See Ocean Industries, Inc., v. Superior Court, supra, wherein the question is treated and authorities cited. Ancient and more modern maps, as well as maritime publications of the United States government, have referred to the Bay of San Pedro as being that portion of the Pacific Ocean lying between the bluffs, now the site of the city of Huntington Beach, and until lately called Point Lasuen, on the east and Point Firmin on the west. The Pacific Coast Pilot, 1889, official government publication; Map of coast "San Diego to Santa Rosa Island," U. S. C. & G. S. No. 5101; "Pacific Coast, San Diego to Santa Monica, including Gulf of Santa Catalina, Cal." U. S. C. & G. S.; the following maps at University of California: Spanish N. A. drawn for Thompson's New General Atlas of 1814; Map marked "Carte De La De L'Amerique; Map Vancouver Chart Coast of N. W. America; Rand-McNally's Atlas 1878 and 1899. Between these points the coast curves inward, and between them (except for detached hills) are lowlands, inlets, and lagoons into which several torrential streams flow from the mountains some 20 or 30 miles inland.

It seems, therefore, and I so decide, that the Bay of San Pedro is that body of water lying landward from a line drawn from Point Lasuen to Point Firmin, and that the sovereignty of the United States and the territory of the state of California extends three miles to seaward from such line. The same conclusion was reached by the Appellate Department of the Los Angeles County California Superior Court in Criminal Appeals No. 734, People v. Haskel.

There is much authority to the effect that the territorial jurisdictional question lies wholly with the court, and is not the subject of evidence, as upon an issue in the trial, and I so hold. See Coffee v. Groover, 123 U.S. 1, 8 S.Ct. 1, 31 L.Ed. 51, relating to the subject of judicial knowledge in determining the boundary line between the states of Georgia and Florida. See, also, Rogers v. Cady, 104 Cal. 288, 38 P. 81, 43 Am.St.Rep. 100, and Ocean Industries, Inc., v. Superior Court, supra.

When, through stipulation of counsel, the exact position of the gambling ship was definitely fixed, as it was in this case immediately before the making of the motion under consideration, the court was bound to apply its judicial knowledge to the situation and determine therefrom whether or not such position was within the jurisdiction of this court. That position being landward from a straight line drawn between Point Lasuen and Point Firmin, it follows that the "Monte Carlo" gambling ship or hulk lay in American and California waters, and that this motion must be decided in accord therewith. Any other determination would be a judicial cession of sovereignty and clearly outside the jurisdiction of any court.

The ruling followed the conclusion just recited, to wit, counts 1 and 3 of the indictment, drawn respectively under sections 481 and 490, Title 18, U.S.C.A., were dismissed, and the motion was denied as to counts 2 and 4, drawn respectively under sections 489 and 88, Title 18, U.S.C.A.