[Civ. No. 9718. First Appellate District, Division One.—January 10, 1936.]

CHARLES F. NOACK, Plaintiff and Appellant, v. I. ZELLERBACH et al., Defendants and Respondents; I. ZELLERBACH, Defendant and Appellant.

Marshall B. Woodworth, Carlos R. Freitas and Jerome A. Duffy for Plaintiff.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Defendants.

GRAY, J., pro tem.—Plaintiff sued the three members of the Fish and Game Commission and three deputy fish and

game commissioners to recover the value of salmon illegally confiscated and earnings lost because threats of arrest and further confiscations prevented him from following his occupation of deep-sea fishing. I. Zellerbach, one of the commissioners, and the three deputies answered. Plaintiff recovered judgment against I. Zellerbach for the value of the salmon, but was denied anything for loss of earnings. I. Zellerbach appeals from the first part of the judgment, and plaintiff appeals from its second part.

The primary question to be decided is whether or not the fish and game commissioner was liable for the acts of the deputy fish and game commissioners. Since a determination that he was not so liable will be decisive of both appeals, only those facts which bear upon this question need be stated. Neither appellant disputes that those facts, as found by the court, are supported by the unconflicting evidence. Hence the question resolves itself into a determination of the sufficiency of the findings to support the judgment.

The following facts appear from the findings: Plaintiff caught a cargo of salmon in the Pacific Ocean more than three miles from the California coast and delivered it at Point Reyes, within state territorial waters, to a captain of a boat for transportation to San Francisco. On its arrival at San Francisco two deputy fish and game commissioners, not named as defendants, seized the cargo of salmon, sold it, and paid the proceeds into the fish and game preservation fund of the state. At the time of its seizure, the cargo of salmon aggregated 2,091 pounds and had a market value of twenty-three cents a pound, or a total value of $480.70. Subsequently the three deputies named as defendants notified plaintiff that they would arrest him if he transported or possessed within any fish and game district during the closed season any fresh salmon, *wheresoever* caught. Plaintiff was intimidated by such threats and induced solely thereby refrained from deep-sea fishing for salmon during the four winter months. The value of the salmon that he would have caught based upon his previous experience, priced at the then market value, amounted to $5,520.

In confiscating the salmon and in notifying plaintiff as to his liability to future confiscations, the deputies acted under a mistaken belief that possession in San Francisco of salmon caught on the high seas was prohibited by section 634

of the Penal Code during the closed season. A year later the Supreme Court in *Svenson* v. *Engelke,* 211 Cal. 500 [296 Pac. 281], construed this section as not prohibiting the possession within any fish and game district during the closed season of fresh salmon caught on the high seas. Since the confiscation and threats were not justified by said section, the deputies were liable in tort for damages caused plaintiff thereby. (*Silva* v. *MacAuley,* 135 Cal. App. 249 [26 Pac. (2d) 887, 27 Pac. (2d) 791].) In holding that a chief of police was not liable for the acts of policemen, the Supreme Court in *Michel* v. *Smith,* 188 Cal. 199, 201 [205 Pac. 113], said: "A public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, if such subordinates are not in his private service, but are themselves servants of the government, unless he has directed such acts to be done or has personally cooperated therein." The statement is in accord with the rule uniformly followed in other jurisdictions. (1 A. L. R. 222; 3 A. L. R. 149; 12 A. L. R. 980.) In *Hilton* v. *Oliver,* 204 Cal. 535 [269 Pac. 425, 61 A. L. R. 297], trustees of a reclamation district were held not liable for the negligence of subordinates, the court saying (p. 539) : "The defendant trustees can be held liable under the facts shown herein only by reason of the application of the doctrine of *respondeat superior.* This doctrine has no application as between a public officer and his subordinates who are likewise in the public service, unless the public officer has directed or countenanced the tortious acts to be done or has cooperated therein." (See annotation in 61 A. L. R. 300.)

The above rule was applied in *Booth* v. *Lloyd,* 33 Fed. 593, and in *Mister* v. *Brown,* 59 Fed. 909, to situations arising out of facts very similar to those of the instant case. In the first case, plaintiffs sued the board of public works of the state of Maryland and the captain of a vessel in its employ for the latter's trespass in seizing and detaining plaintiffs' oyster boat for violation of a state license law. The captain was held liable because the law which was the supposed justification of his act was unconstitutional. The board was freed from responsibility for the captain's trespass in the following pertinent language, which is a complete answer to plaintiff's argument (p. 598) : "The first difficulty that arises in the way of the plaintiffs recovering against the members of the board of

public works is that they have offered no proof that they ever ordered the arrest and seizure of the plaintiffs' captains and vessels. While it may be admitted that an unconstitutional statute will offer no protection to the officer who acts under it, it is nevertheless necessary to show that he advised, directed, aided, and abetted the conduct which constitutes the cause of action. So far as this case is concerned, there is no such proof. It is left to inference, merely, that because the officer who made the seizure was an officer of the state under the control of the board of public works that therefore they directed him to make the seizure. It is not shown that the board of public works ever considered the matter, or how many of them united in a resolution to direct the captain, Smoot, to make the seizure. Surely the members of the board who voted against it are not liable, and without proof we cannot infer that all or any one consented." .

The case of *Mister* v. *Brown, supra,* was a libel in admiralty against the Maryland board of public works and a deputy commander of a state fishing sloop for the death of the master of an oyster-dredging schooner, who, when fleeing to escape arrest for illegal dredging, was killed by a shot fired by such deputy. The court thus described the law involved (p. 910) : "The law of Maryland (Code, art. 72) prescribes regulations for taking oysters in the waters of the state, and directs the deputy commanders in charge of the vessels of the state fishery force to constantly guard the waters of their respective districts, and to arrest and bring to justice all violators of the law, and to seize offending vessels. By section 25 the board of public works are empowered and directed to purchase for each guard boat such arms and ammunition as may be necessary to make them efficient, and the same section directs that the officers of such boats shall be authorized to use such arms, in their discretion, for the enforcement of the provisions of the oyster laws of the state. . . . By the act of 1886, C. 296, the additional duty was imposed upon the board to supervise the commander in chief of the state fishery force in his control and direction of the force, and to appoint the commander in chief for the whole force and a deputy commander for each vessel." For the purpose of comparison, it is well to set forth the applicable part of section 642 of the Political Code: "It is the duty of the fish and game commissioners: 1. To see that the laws for the protection and preser-

vation of . . . fishes . . . are strictly enforced, and for that purpose . . . to employ such deputies . . . as they may need . . . ; all deputies appointed . . . shall be public officers and shall have all the powers and authority of sheriffs and other peace officers to make arrests for violations of such laws . . . and every deputy . . . shall furnish to the state of California a surety bond . . . for the faithful performance of his duties . . . 2. The fish and game commissioners, or their deputies, shall seize and take possession of all . . . fish . . . which has been caught . . . contrary to the laws of this state . . . " Section 904 et seq. of the same code requires a deputy fish and game commissioner to take an oath of office.

In the cited case the fault charged against the board of public works was that they had not instructed the deputy commander to refrain from shooting when the circumstances were such as existed when decedent was shot. The reasons stated by the court in freeing the board from responsibility for the deputy commander's tort can be equally well applied to the instant case. The deputy commander was required to take an oath of office and give a bond. His duties were prescribed by law and not by the board. While the board was directed to purchase arms, the law authorized the deputy to use them. The board was not required to instruct as to the use of arms, since that was already covered by the law. The board was not present at the shooting nor had it ordered such shooting. For its purely official and ministerial action in appointing the deputy and providing him with arms, the board cannot be held personally liable for the deputy's wrongful use of the firearms. The section of the Political Code provides that a deputy fish and game commissioner is a public officer with the powers of a sheriff and defines his duties. He acts under power originally granted to him by law and not under power derived from the commissioner, as his representative. The only allegation of the complaint which attempts to connect I. Zellerbach with the deputies' wrong was that he was then fish and game commissioner. His answer admits this and the findings follow the admission. There is neither allegation nor proof that he knew of, instructed or ratified their actions.

The findings warrant the conclusion of law that I. Zellerbach was not liable for lost earnings, but do not warrant the conclusion that he was liable for the value of the salmon.

The judgment is reversed and the trial court is ordered to correct its conclusion of law as to his liability for the value of the salmon so that it will conclude that he is not so liable and thereupon enter judgment in his favor on both counts of the complaint. (*Estate of Lee*, 200 Cal. 310 [253 Pac. 145]; *Quigley* v. *Nash*, 1 Cal. (2d) 502 [36 Pac. (2d) 112]; *Bayside Land Co.* v. *Dabney*, 90 Cal. App. 122 [265 Pac. 564].)

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 8, 1936, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 9, 1936.