[Civ. No. 2657.   Fourth Dist.   Mar. 5, 1942.]

BURR H. PRENTICE, Appellant, v. G. M. BERTKEN et al., Respondents.

Burr H. Prentice in pro. per. for Appellant.

Earl Warren, Attorney General, R. S. McLaughlin, Deputy Attorney General, Thomas Scott, District Attorney, and John B. Young, Deputy District Attorney for Respondents.

SCHOTTKY, J. pro tem.—Appellant appeals from a judgment of dismissal entered after respondents' general demurrer to appellant's amended complaint had been sustained without leave to amend.

Briefly summarized, the amended complaint alleged: that plaintiff was doing business under the fictitious name of "Smileage Company"; that defendant Anderson was the Justice of the Peace of the Fourth Township in Kern County; that defendants Scott and Palmer were, respectively, District Attorney and Deputy District Attorney of Kern County; that defendant Bertken was a California Highway Patrol Officer; that on October 5, 1937, said defendants "entered into a collusion and conspiracy, and in furtherance thereof" filed in said justice's court a complaint against appellant and one T. R. Driskell, alleging falsely that they had violated the Vehicle Code by operating an overloaded truck and trailer on the highway; that said case was heard in said justice's court on November 3, 1939; that appellant was found guilty; that an appeal was taken to the superior court and said conviction was reversed and a new trial ordered in the superior court; that on April 26, 1940, said charge was dismissed in the superior court; that on December 22, 1939, said defendants "further conspired and colluded together, and in furtherance thereof did falsely, maliciously and fraudulently and without probable cause therefor," cause to be filed a second criminal complaint wherein appellant, designated as the "Smileage Company," was charged with the same offense as was charged in the first complaint; that defendants "falsely, fraudulently, maliciously and without probable cause" caused a summons to be issued in which defendant Smileage Company was ordered to appear in said justice's court, which summons was served on appellant, and that upon appellant appearing in said court, said defendants "in furtherance of said unlawful conspiracy, falsely, fraudulently, maliciously and without probable cause therefor, unlawfully attempted to coerce appellant to be arraigned" on said charge, but appellant refused to be arraigned and prior to the commence-

ment of this action all proceedings upon said second complaint legally ceased and terminated favorably to appellant; that respondents knew that the justice's court had no jurisdiction to proceed on said second charge; and that respondents did all of these things "with the deliberate design and intent to institute and maintain false and fraudulent charges against plaintiff . . . maliciously and without probable cause. . . ."

It will be noted that respondents are respectively justice of the peace, district attorney, deputy district attorney and highway patrol officer. The principal question discussed in the briefs is whether or not the respondent public officials are liable in a civil action for damages alleged to have been sustained through the prosecution of a criminal action with malice and without probable cause.

The case of *Cooke* v. *Bangs*, 31 Fed. 640, was a case where a justice of the peace committed a person for contempt, and on such person being liberated on habeas corpus, recommitted him on a fresh warrant for the same offense. It was held that the justice of the peace was not amenable to a civil action for false and malicious imprisonment although his action in making the second commitment was erroneous, and although it was alleged that he acted maliciously. In an opinion written by Justice Brewer, of the Supreme Court, sitting as a circuit justice, the court said, at page 642:

"With respect to all judicial officers,—justices of the peace, as well as judges of the higher courts,—the settled law of the supreme court of the United States, and I think the plain intimation of the supreme court of this state, is that, where they act within their jurisdiction, they are not amenable to any civil action for damages. No matter what their motives may be, they cannot be inquired into."

In *Pearson* v. *Reed*, 6 Cal. App. (2d) 277 [44 Pac. (2d) 592], the court, in reversing three separate judgments against the City Prosecutor of Los Angeles, said, at page 287:

"The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would

always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. Not only would the prosecutor himself be subjected to groundless suits, but his deputies likewise would be accused. The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded and we would have moved away from the desired objective of stricter and fairer law enforcement. We are well aware of the fact that in thus shielding the public prosecutor against actions of this sort the rule may work hardship and injustice in individual cases. But there is no middle ground to be occupied in the matter; either all of such suits are to be tolerated or none. We are confronted with the not unusual situation that calls for the subordination of the rights of the few to the interests of the whole body of the public. The doctrine of immunity is not for the benefit of the few who might otherwise be compelled to respond in damages. It is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment, uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service.''

In *White* v. *Brinkman,* 23 Cal. App. (2d) 307 [73 Pac. (2d) 254], the court said at page 313:

''District attorneys and public prosecutors are vested with certain *quasi*-judicial powers; and in the official exercise of those powers they enjoy civil immunity as fully as judges themselves, even though they act with evil motives or corruptly. Says the court in *Smith* v. *Parman,* 101 Kan. 115, 116 [165 Pac. 663, L. R. A. 1917F, 698] : 'The public prosecutor in deciding whether a particular prosecution shall be instituted or followed up performs much the same function as a grand jury. If, while he has a question of that kind under advisement, he is charged with notice that he may have to defend an action for malicious prosecution in case of a failure to convict, his course may be influenced by that consideration, to the disadvantage of the public. . . . We think the reason for granting immunity to judges and grand jurors applies with practically equal force to a public prosecutor in his relations to actions to punish infractions of the law. There is no great danger that abuse of power will be fostered by

this exemption from civil liability, for the prosecutor is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct . . . or of being ousted from office on that account.' In the same strain the Supreme Court of Wisconsin in *In re Bentine,* 181 Wis. 579, 587 [196 N. W. 213, 214], quoted from *Wight* v. *Rindskopf,* 43 Wis. 344, 354, the following passage: 'A public prosecutor is a *quasi*-judicial officer, retained by the public for the prosecution of persons accused of crime in the exercise of a sound discretion to distinguish between the guilty and the innocent, between the certainly and the doubtfully guilty.' "

And again at page 317:

"The principle is one so well established as to have become elementary; and it affords protection in general to officers and public servants exercising judgment and discretion in the discharge of their duties, howsoever they may be called. Among those in whose behalf the rule has been successfully invoked have been members of a board of health, county supervisors, food inspectors, registrars of voters, election inspectors and other officers and commissioners charged with duties of various kinds involving judgment and discretion." (See, also, *Cooper* v. *O'Connor,* 99 Fed. (2d) 135 [69 App. D. C. 100, 118 A. L. R. 1440].)

█  It seems clear from the authorities that the respondents Anderson, Scott and Palmer come within the rule exempting judicial and quasi-judicial officers from civil liability even though there may be malicious or corrupt conduct in the exercise of jurisdiction.  █  However, we believe that the respondent Bertken, the highway patrol officer who swore to the complaint, cannot be considered either a judicial or a quasi-judicial officer, and that it would be a dangerous doctrine to extend the rule exempting public officials or officers from civil liability further than it has already been extended.

As was said in the case of *Cooper* v. *O'Connor, supra,* at page 141:

"In several of the cases in which the rule of immunity has been applied the rationalization used has been that the particular defendant was a judicial officer, or was engaged in a judicial determination, or was so closely associated with the judicial process as to make necessary his protection from harassment in order to protect the judicial process. It must be admitted that this rationalization does not apply with equal

force to the appellees, other than Rover and Goldstein. Even police, detectives and investigators—the group into which Simon falls—are generally not trained for participation in judicial determinations; and are sometimes apt to become oppressive in administration of their duties, unless kept under close restraint by prosecutors and judges. In the case of the other appellees, it can be persuasively argued that even though their assistance was necessary for successful prosecution, it was possible for the Attorney General or the United States District Attorney to appoint them special assistants for the purpose, as was done in the case of *Yaselli* v. *Goff*, [12 F. (2d) 396, 56 A. L. R. 1239, affirmed, 275 U. S. 503, 48 S. Ct. 155, 72 L. Ed. 395]; thus avoiding an undue extension of a rule which may come to be a dangerous limitation upon the rights of a free people.''

Some confusion has arisen as to just how far immunity should be extended, and it has been held to apply to such public officials as members of a board of health, registrars of voters, election commissioners, building inspectors and other officers and commissioners charged with duties of various kinds involving judgment and discretion. These cases have sought to show that the particular officer or officers involved were performing quasi-judicial functions. No case has been cited, and we have been unable to discover any, in which a police or peace officer was held to be exempt from civil liability in an action for malicious prosecution, where he has acted maliciously and without probable cause.

While it may be considered as settled public policy that judicial and quasi-judicial officers acting within the scope of their jurisdiction are exempted from liability for malicious prosecution, even though they have acted without probable cause and with malice, it seems to us that courts have already extended the rule to a dangerous extent. We do not believe that public policy requires that the doctrine of immunity be extended so far as to exempt from civil liability a peace officer who maliciously and without cause initiates a prosecution against a citizen. The briefest reflection will lead one to conclude that to do so might be dangerous to the rights of a free people and lead to great oppression and injustice. In the instant case we are, of course, only passing upon the question as to whether or not the demurrer was properly sustained and must necessarily accept as true the allegations of the complaint.

In actions for malicious prosecution it must be alleged that the prosecution is at an end either by alleging that defendant was acquitted of the charge or by alleging facts showing the legal termination of the prosecution complained of in favor of defendant prior to the commencement of the action. (*Holliday* v. *Holliday,* 123 Cal. 26 [55 Pac. 703]; *Carpenter* v. *Nutter,* 127 Cal. 61 [59 Pac. 301]; *Plum* v. *Becket,* 120 Cal. App. 507 [7 Pac. (2d) 1111]; *Wilson* v. *Troy,* 19 Cal. App. (2d) 156 [64 Pac. (2d) 1141].)

We believe that the amended complaint fails to allege facts showing that the prosecution in question terminated in favor of appellant. Paragraph VIII sets forth, in substance, that defendants attempted to coerce plaintiff to be arraigned on said charges but that plaintiff refused to be arraigned; "and that thereupon, and prior to the commencement of this action, all proceedings relating to and taken upon said second complaint legally ceased and terminated favorably to this plaintiff." This allegation falls far short of alleging facts showing that the prosecution in question terminated in favor of appellant. In fact, it does not allege facts showing that said prosecution ever terminated. At most, appellant alleged that he refused to be arraigned on the charge, and "that thereafter all proceedings . . . legally ceased and terminated favorably to the plaintiff." A refusal to be arraigned does not terminate a criminal proceeding and a mere allegation that all proceedings legally ceased and terminated is but a conclusion without any other facts alleged to support it. There is no other allegation on this subject.

In view of the foregoing, we conclude that the amended complaint does not state a cause of action, and that the court below properly sustained the demurrer thereto.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 30, 1942. Carter, J., voted for a hearing.