[L. A. No. 21804. In Bank. Sept. 4, 1951.]

CLAUDE WHITE, Appellant, v. CHARLES TOWERS, Respondent.

Joseph K. Coady for Appellant.

Fred N. Howser and Edmund G. Brown, Attorneys General, Bayard Rhone and Norman Sokolow, Deputy Attorneys General, for Respondent.

SPENCE, J.—In this action for damages for alleged malicious prosecution, plaintiff has appealed from the judgment entered in favor of defendant following an order sustaining defendant's demurrer without leave to amend.

According to the allegations of the complaint, defendant maliciously and without probable cause procured the institution of two criminal proceedings against plaintiff. In both proceedings the charges were based upon events which allegedly occurred on October 3, 1948. The first proceeding, filed in the Municipal Court of the City of Long Beach on October 5, 1948, charged plaintiff with having violated section 481 of the Fish and Game Code, in that he had deposited certain petroleum matter, deleterious to fish and plant life, in the waters of the State of California. On October 28, 1948, that proceeding was dismissed. On April 29, 1949, defendant, by sworn affidavit, caused a second proceeding to be instituted in the United States District Court for the Southern District of California, charging plaintiff with violation of section 407 of 33 U.S.C. (pollution of navigable waters). On July 19, 1949, plaintiff was acquitted in the second proceeding.

In the present action, it appears that the trial court sustained defendant's demurrer without leave to amend because it affirmatively appeared in an affidavit, attached to and incorporated by reference in the complaint, that defendant was an investigator for the State Fish and Game Commission. It was not alleged that defendant had acted without the scope of his authority; and the trial court concluded that as such investigator acting within the scope of his authority, defendant was immune from civil liability for alleged malicious prosecution. Thus, the main issue presented is whether defendant Towers, as an investigator for the State Fish and Game Commission, is immune from civil liability for the alleged malicious prosecution of said criminal proceedings.

Plaintiff contends first, that the doctrine of immunity from civil liability is not available to defendant with respect to either prosecution because defendant is at best a peace officer; and second, that in any event said doctrine has no application to the proceeding in the federal court as defendant was acting without the scope of his authority in instituting a proceeding in that court. We have concluded, however, that plaintiff's contentions cannot be sustained.

In support of his first contention, plaintiff cites and relies upon certain language found in *Prentice* v. *Bertken,* 50 Cal. App.2d 344, 349 [123 P.2d 96], but, as hereinafter indicated, we believe that sound reasons of public policy require that a peace officer, or other comparable official, be shielded by the cloak of immunity from civil liability for alleged malicious prosecution. At the outset, we are faced with an apparent conflict between the public policy of protecting individual citizens from oppressive official action and the equally well established policy of promoting the fearless and effective administration of the law for the whole people by protecting public officers from vindictive and retaliatory damage suits. However, we feel that both policies may at once be subserved by refusing to permit civil actions against the officer for alleged malicious prosecution and remanding the offended individual to his remedy under the penal statutes. (E. g., Pen. Code, § 170.)

When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty. The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the

accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. "Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution." (*Watts* v. *Gerking,* 111 Ore. 641, 669 [222 P. 318, 228 P. 135, 34 A.L.R. 1489].) ▮ It is patent that defendant Towers is a law enforcement officer, charged with the duty of enforcing laws for the protection of fish and game. As such officer he is entitled to the immunity from civil liability with which the law surrounds officials directly connected with the judicial processes. To rule otherwise would place every honest law enforcement officer under an unbearable handicap and would redound to the detriment of the body politic. "The public welfare requires that this choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make the assurance positive and definite by securing him against even actions based upon a malicious abuse of his official power." (*Phelps* v. *Dawson,* 97 F.2d 339, 340 [116 A.L.R. 1343].)

We are not impressed with the argument that to extend such immunity to peace officers is a major step toward "statism." Such argument erroneously assumes that our law enforcement agencies are rife with persons who will abuse their powers, and that the imposition upon law enforcement officers of civil liability for alleged malicious prosecution is necessary to curb such abuse. But as has been said with respect to public prosecutors: "There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the [peace officer] is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct or of being ousted from office on that account." (*Smith* v. *Parman,* 101 Kan. 115, 117 [165 P. 663, L.R.A. 1917F 698].)

We are aware of the fact that in thus surrounding peace officers with immunity in cases of this sort, hardship may result to some individuals. However, experience has shown that the common good is best served by permitting law enforcement officers to perform their assigned tasks without fear of being called to account in a civil action for alleged malicious prosecution. The doctrine of immunity from liability for allegedly malicious acts has long been established with

respect to numerous public officers. In the early case of *Bradley* v. *Fisher*, 13 Wall. (U.S.) 335 [20 L.Ed. 646], the doctrine was applied to judges of courts of record. ''The rule finds its genesis in the necessary protection of courts in the impartial, uninfluenced discharge of judicial duties.'' (*Phelps* v. *Dawson, supra*, 97 F.2d 339, 340.) Since that time it has been recognized that the orderly administration of the affairs of government necessitates the inclusion of many officials within the cloak of immunity. Executive heads of administrative departments have been included (*Spalding* v. *Vilas*, 161 U.S. 483 [16 S.Ct. 631, 40 L.Ed. 780]; *Gibson* v. *Reynolds*, 172 F.2d 95; *Adams* v. *Home Owners Loan Corp.*, 107 F.2d 139; *Lang* v. *Wood*, 67 App.D.C. 287 [92 F.2d 211]; *Brown* v. *Rudolph*, 58 App.D.C. 116 [25 F.2d 540], cert. denied 277 U.S. 605 [48 S.Ct. 601, 72 L.Ed. 1011]; *Mellon* v. *Brewer*, 57 App.D.C. 126 [18 F.2d 168], cert. denied 275 U.S. 530 [48 S.Ct. 28, 74 L.Ed. 409]; *U.S. to the Use of Parravicino* v. *Brunswick*, 63 App.D.C. 65, 68 [69 F.2d 383]; *Farr* v. *Valentine*, 38 App.D.C. 413; *Thibodaux* v. *Town of Thibodaux*, 46 La.Ann. 1528 [16 So. 450]), as well as their deputies, who act in their stead (*Standard Nut Margarine Co.* v. *Mellon*, 63 App.D.C. 339 [72 F.2d 557], cert. denied 293 U.S. 605 [55 S.Ct. 124, 79 L.Ed. 696]; *De Arnaud* v. *Ainsworth*, 24 App.D.C. 167 [5 L.R.A.N.S. 163]; *U.S. to the Use of Parravicino* v. *Brunswick, supra*, 63 App.D.C. 65, 68).

The last cited cases, however indicative of the trend of judicial decision, do not furnish the persuasive reason for holding that the doctrine extends to peace officers. Rather, it is the line of cases which directly concerns the application of the doctrine to those connected with the judicial processes which is determinative herein. Thus, it has been held almost universally that public prosecutors are entitled to immunity. (*Norton* v. *Hoffmann*, 34 Cal.App.2d 189 [93 P.2d 250]; *White* v. *Brinkman*, 23 Cal.App.2d 307, 313 [73 P.2d 254]; *Pearson* v. *Reed*, 6 Cal.App.2d 277 [44 P.2d 592]; *Laughlin* v. *Rosenman*, 163 F.2d 838; *Laughlin* v. *Garnett*, 138 F.2d 931; *Cooper* v. *O'Connor*, 69 App.D.C. 100 [99 F.2d 135, 118 A.L.R. 1440]; *Yaselli* v. *Goff*, 12 F.2d 396 [56 A.L.R. 1239]; *Anderson* v. *Rohrer*, 3 F.Supp. 367; *Smith* v. *Parman, supra*, 101 Kan. 115; *Griffith* v. *Slinkard*, 146 Ind. 117 [44 N.E. 1001]. But see *Leong Yau* v. *Carden*, 23 Hawaii 362.) Similarly, grand jurors were early held to be protected against civil actions for alleged malicious prosecution. (*Turpen* v. *Booth*, 56 Cal. 65 [38 Am.Rep. 48].) A review of the cases

which have concerned the application of the doctrine to law enforcement officers shows that the great majority of the courts have ruled in favor of the officers. Thus, in *White* v. *Brinkman, supra,* 23 Cal.App.2d 307, it was said that a building inspector, charged with the investigation of purported violations of building ordinances, was immune from civil liability for alleged malicious prosecution. Similarly, in *Phelps* v. *Dawson, supra,* 97 F.2d 339, it was held that a deputy fire marshal, charged with investigating fires, was immune; and in *Springfield* v. *Carter,* 175 F.2d 914, an assistant city engineer, a deputy building inspector, and a fire inspector were held to be immune because their official duties encompassed the investigation of particular crimes and the institution of criminal proceedings. Finally, in *Cooper* v. *O'Connor, supra,* 99 F.2d 135, a special agent of the Federal Bureau of Investigation was held to be included within the cloak of immunity. The court there stated: "The administration of criminal justice would be impossible without the active participation of public officials representing departments concerned with the enforcement of particular laws . . . It is the duty of all citizens to reveal such evidence, of which they may have knowledge, at the risk of being guilty of misprision of felony for failing to do so. In the case of an official, his failure to act under such circumstances would, in addition, constitute serious malfeasance in office." (99 F.2d 135, 140.)

While there is language in *Prentice* v. *Bertken, supra,* 50 Cal.App.2d 344, which lends support to plaintiff's position, such language is out of harmony with the majority view which establishes the sounder rule, and therefore that language must be disapproved.

"The doctrine of immunity is not for the benefit of the few who might otherwise be compelled to answer in damages. It is for the benefit of all to whom it applies, that they may be free to act in the exercise of honest judgment uninfluenced by fear of consequences personal to themselves. This again is not for their personal advantage or benefit. It is only that they may be enabled to render a better public service." (*Pearson* v. *Reed, supra,* 6 Cal.App.2d 277, 288.)

■ Although public policy demands that the peace officer be free from liability in civil actions for alleged malicious prosecution, such policy does not go so far as to free the offending officer from all liability, for it has long been the law in this state that, "[e]very person who maliciously and without probable cause procures a search-warrant or warrant of arrest

to be issued and executed, is guilty of a misdemeanor.'' (Pen. Code, § 170.) Such penal provision manifestly could have been invoked here if plaintiff could have sustained his charges. That section provides some measure of protection for the individual citizen from the specified malicious acts of any person, including law enforcement officers; and a resort to such penal action would subserve the public interest far better than would a resort to civil litigation against the public officer. (*Smith* v. *Parman, supra,* 101 Kan. 115.) This penal provision is also the direct answer to the claim that the adoption of the doctrine of civil immunity constitutes a step toward the creation of a ''police state.''

█ It is also well established that a public officer is liable for injuries caused by acts done outside the scope of his authority. (67 C.J.S. § 126, p. 419; *Laughlin* v. *Garnett, supra,* 138 F.2d 931; *Cooper* v. *O'Connor, supra,* 99 F.2d 135, 137-138.) █ However, plaintiff's second contention that defendant Towers was acting outside the scope of his authority in instituting proceedings in the federal court is without merit. The alleged penal offense occurred in the littoral waters of the State of California which were under the concurrent jurisdiction of the state and federal governments. (*C. J. Hendry* v. *Moore,* 318 U.S. 133 [63 S.Ct. 499, 87 L.Ed. 663]; *United States* v. *Carrillo,* 13 F.Supp. 121; *People* v. *Stralla,* 14 Cal. 2d 617 [96 P.2d 941].) Defendant Towers was no less discharging his duty to enforce the laws for the protection of fish and game by instituting the proceeding in the federal court than he would have been if all proceedings had been instituted in the state courts. █ ''Duties of public office include those lying squarely within its scope, those essential to accomplishment of the main purposes for which the office was created, and those which, although only incidental and collateral, serve to promote the accomplishment of the principal purposes.'' (*Nesbitt Fruit Products* v. *Wallace,* 17 F.Supp. 141, 143.) It would be an anomalous doctrine which would deny a public officer access to any properly constituted tribunal with jurisdiction over the alleged offense on the ground that said officer was a state officer attempting to discharge his duty by a proceeding in the federal courts, or was a federal officer attempting to discharge his duty by a proceeding in the state courts.

A somewhat similar argument was raised and rejected in *Norton* v. *Hoffmann, supra,* 34 Cal.App.2d 189, wherein a deputy city attorney of the city of Los Angeles, with the authorization of the city attorney, had instituted criminal pro-

ceedings charging plaintiff with having appeared in the capacity of an attorney in a municipal court proceeding, when he was not an active member of The State Bar. Plaintiff in that case argued that the city officials were acting without the scope of their authority in instituting criminal proceedings instead of proceeding before The State Bar. The court, however, held that a proceeding in either tribunal was proper, and that the city attorney and his deputy could properly resort to either. Further, as was stated in *United States* v. *Birdsall,* 233 U.S. 223, 235 [34 S.Ct. 512, 58 L.Ed. 930], ''in determining the scope of official action regard must be had to the authority conferred; and this . . . embraces every action which may properly constitute an aid in the enforcement of the law.'' Here the complaint affirmatively showed that defendant Towers was an investigator for the Fish and Game Commission; and in the absence of any allegation to the contrary, it is to be assumed that he had authority to enforce laws for the protection of fish and game. Whether, upon the charge of pollution of the waters in question, he chose to proceed in the state courts or in the equally available federal courts is immaterial in determining whether he was acting outside the scope of his authority. (See, also, *Spalding* v. *Vilas, supra,* 161 U.S. 483, 498; *Standard Nut Margarine Co.* v. *Mellon, supra,* 72 F.2d 557, 559.)

It is therefore apparent that the demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

The majority holding in the present case affirming a judgment of dismissal following an order sustaining defendant's demurrer to plaintiff's complaint without leave to amend, adds another case to the growing list of those recently decided by this court which have arbitrarily deprived a plaintiff of his right to a trial on the merits.

Plaintiff's complaint stated a cause of action for malicious prosecution and defendant's demurrer thereto should have been overruled. Defendant Towers' affidavit (made part of the complaint) stated that he was an ''investigator'' for the California Division of Fish and Game. The trial court, in sustaining the demurrer to the complaint without leave to amend, repeated that averment and then held, in his memorandum

opinion, that "it would seem that an *Inspector* of the Fish and Game Commission" should be immune from civil liability for malicious prosecution. (Emphasis added.)

The Fish and Game Code provides in section 20 that: "The commission shall, from time to time, employ such deputies, with, or without pay, *clerks, assistants and other employees* as they may need to discharge in proper manner the duties imposed upon them by law." Section 21 provides, in part, that: "*All deputies* appointed to enforce the provisions of this code are public officers and have all the powers and authorities of peace officers to make arrests for violations of this code, and may serve all processes and notices throughout the State . . ." (Emphasis added.) The trial judge and a majority of this court have assumed too much. *Only* deputies, by provision of the code, have authority to make arrests and serve processes and notices. In what category is an "Investigator" or an "Inspector"? It has been assumed throughout that one in Towers' position is a deputy. If he is actually a deputy who was appointed to enforce the provisions of the code, then, and then only, is this court privileged to decide whether the immunity from civil suit for malicious prosecution should be extended to him. But before that may be legally done, there are questions of fact presented for determination—his capacity and the scope of his authority. Under the pleadings there is absolutely no way for anyone to know what an investigator of the Fish and Game Commission is, or what his duties, power and authority are. The majority of this court maintain that because plaintiff did not affirmatively allege anything to the contrary, it was to be "assumed" that Towers was a law enforcement officer who had authority to enforce laws for the protection of fish and game. With this I can not agree. If Towers was a deputy at the time the prosecution was commenced and empowered to institute actions on behalf of the commission, that was a matter of defense and *a plaintiff is not required to anticipate defenses.* (*Jaffe* v. *Stone,* 18 Cal.2d 146, 159 [114 P.2d 335, 135 A.L.R. 775]; *Pulvermacher* v. *Los Angeles Co-ordinating Committee,* 61 Cal.App.2d 704, 708 [143 P.2d 975].) Defendant Towers' affidavit, which led to the prosecution of plaintiff in the federal court, was filed on April 29, 1949. The events which led to the prosecution of the plaintiff were alleged to have occurred on October 3, 1948; the first proceeding against him was filed on October 5, 1948. The affidavit of defendant, filed in April, 1949, is the only basis for holding that he, as an investigator,

should be extended immunity from civil suit. It has also been assumed that because he was an investigator on that date he was so employed on October 3d and 5th, *1948*. In my opinion, to assume such facts for the purpose of sustaining a demurrer to the complaint is an unwarranted and arbitrary exercise of judicial power.

Plaintiff has alleged the successful termination of the prosecutions against him—he has alleged malice and want of probable cause—he has alleged the injury suffered by him as a result thereof to his damage in a certain sum. He certainly should not be required to allege, in addition, that the defendant had the right to arrest him while acting within the scope of his authority. What if the plaintiff had alleged that defendant was an "employee" (§ 20) of the Fish and Game Commission and had incorporated defendant's affidavit in which it was averred that he was employed as a janitor in the offices of the commission? Would this court then assume that he was a deputy, on the day the prosecution was commenced, and acting within the scope of his authority so that immunity from civil liability could be extended to him? Probably.

It has been specifically held in this state that deputy fish and game commissioners are liable in damages for unlawfully confiscating fish, and for torts committed in connection with such confiscation, even though they acted under a mistaken belief that the confiscation was proper (*Noack* v. *Zellerbach*, 11 Cal.App.2d 186, 188 [53 P.2d 986] [hearing denied]; *Silva* v. *MacAuley*, 135 Cal.App. 249 [26 P.2d 887, 27 P.2d 791] [hearing denied]). Assuming for the moment that an investigator is a deputy, if deputies are liable in damages when they are acting in good faith, albeit mistakenly, why should they not be held liable if the action is taken with malice? The Restatement of Torts (§ 656[d]) states that only *public prosecutors* are immune from such liability and that the immunity does not apply to *all* persons whose function it is to aid in the enforcement of the criminal law. While it may be admitted that malicious prosecution is a disfavored action, the policy should not be pressed further to the extreme of practical nullification of the tort, and the consequent defeat of the other important policy which underlies it, of protecting the individual from the injury caused by unjustifiable criminal prosecution (*Jaffe* v. *Stone*, 18 Cal.2d 146, 159 [114 P.2d 335, 135 A.L.R. 775]; *Schubkegel* v. *Gordino*, 56 Cal.App.2d 667, 672 [113 P.2d 475]; *Pulvermacher* v. *Los Angeles Co-ordinating Committee, supra*). The plaintiff here should have been permitted

to prove, if he could, that defendant was not acting within the scope of his authority 'and therefore not entitled to the privilege of immunity. This court, in affirming the action taken by the trial court, has decided that defendant investigator or inspector was acting within the scope of his authority without even being sure that he was so employed at the time of the first prosecution. Having made these assumptions, it is then arbitrarily held, that whatever his official duties were, immunity from civil liability should be extended to him. Plaintiff has, in effect, been denied his day in court as the result of this holding.

As is usual in these cases, this court settled a conflict in policy by deciding that the police should be favored in the "fearless and effective administration of the law." I agree that the police should not be unduly hampered but surely the individual citizen is entitled to some protection and should be reimbursed or compensated for injury done to him without right and with malice. Are the police, or any employees of any governmental body, to be given carte blanche to arrest, or bring unwarranted criminal actions, without probable cause, and with malice, and go scot free? Again, in this case, the one injured by the malicious prosecution is said to have a remedy under the penal statutes (*People* v. *Mayen,* 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383] ; *People* v. *Rochin,* 101 Cal. App.2d 140 [225 P.2d 1, 913], [cert. granted]). I should like to have brought to my attention any such case where a plaintiff has been successful, or even where a prosecution has been instituted. It is absurd to suggest that any district attorney, or superior officer, is going to take criminal action against one of his subordinates at the request of one injured by an unwarranted prosecution, especially where the prosecutor has relied upon the testimony of the subordinate as a basis for the prosecution. Furthermore, even if a plaintiff did succeed in a criminal action against an officer, would the conviction be of any aid to him financially? A plaintiff who has been subjected to malicious prosecution has been injured not only in his reputation, but in a monetary sense in that he has been put to the expense of defending himself against such unfounded charges. The majority opinion states that public officers should be protected from "*vindictive and retaliatory damage suits.*" The reverse situation is presented here: Any employee, clerk, assistant, investigator, inspector or deputy is, by this holding, protected when he has instigated the com-

mencement and prosecution of a vindictive and malicious suit. This is true because the allegations of plaintiff's complaint must be taken as true, and he has alleged that the action was brought with malice and without probable cause. Any officer of the law is in a better position to defend himself against a malicious prosecution action than is a defendant in a criminal case. The Fish and Game Code, for example, specifically provides (§ 21.5) that the attorney for the Division of Fish and Game shall act as counsel in defense of any officer or deputy in any suit for damages brought against such officer or deputy alleged to have occurred as the result of the negligence or misconduct of the officer or deputy while engaged in the performance of his official duties. But a private individual who has been subjected to malicious and unwarranted criminal prosecution has no such free defense avalaible to him. He must, at his own expense, hire his own lawyer and pay his own costs. I am at a loss to understand how the problematical "resort to such penal action" (Pen. Code, § 170) provides "some measure of protection for the individual citizen" and how it "would subserve the public interest far better than would a resort to civil litigation against the public officer." (Majority opinion.)

The plaintiff contends, and I agree, that the holding in this case is a major step toward statism. This case extends the doctrine of immunity to one who labels himself an "investigator" on the assumption that such an employee is a deputy commissioner acting within the scope of his authority in bringing such an action. One has only to read the cases cited by the majority to see how the doctrine has been unnecessarily stretched and expanded to cover almost any type of employee. For this court to reach out and extend immunity from civil liability under the pleadings in this case, is to lay a foundation for an extension of the privilege that is, to my mind, unthinkable. The protection of individual rights should be zealously guarded from unwarranted police action, and the privilege of police immunity should be available only to those whose clear-cut duty it is to apprehend violators of the laws of this state. The privilege of immunity should not be extended to those whose duties, power and authority are undefined.

Under the pleadings in the case at hand, plaintiff was entitled to proceed to trial for a determination of the questions of fact presented, and I would therefore reverse the judgment and direct the trial court to overrule the demurrer.

Schauer, J., concurred.

EDMONDS, J.—I concur in the conclusion that the allegations of the complaint in regard to the position held by Towers do not show him to be a person who, by virtue of official position, is exempt from civil liability for malicious prosecution.